**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LAVETTA ELK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 05-186 |
| v. | ) | Judge Francis M. Allegra |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION *IN LIMINE* AND MEMORANDUM IN IN SUPPORT THEREOF**

Plaintiff Lavetta Elk ("Plaintiff") brings suit against Defendant, the United States of America ("Defendant"), for compensation under the "Bad Men" clause of the Treaty with the Sioux of April 29, 1868. Specifically, Plaintiff asserts that she was sexually assaulted, on January 7, 2003, by Joseph P. Kopf, United States Army Staff Sergeant ("Sergeant"). She seeks compensatory damages in the amount of $100,000,000.00, costs, attorney's fees, and all other damages permitted by the Treaty. Plaintiff, however, cannot demonstrate that she incurred any expenses arising from the alleged harm. Thus, Plaintiff is not entitled to such compensation. In addition, Plaintiff's claim that she experienced miscarriages, because of the stress associated with the assault is without merit. Accordingly, Plaintiff is not entitled to compensation stemming from such miscarriages. Consequently, pursuant to the Rules of the United States Court of Federal Claims, and the Court's Order of October 25, 2007, the United States respectfully seeks an order, *in limine*, to exclude Plaintiff from presenting any evidence of costs arising from the assault and any evidence stemming from allegedly stress-related miscarriages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a member of the Oglala Sioux Tribe. Def.'s Answer, ¶ 1. Plaintiff was interested in joining the United States Army; and, in 2002, Plaintiff was recruited to join the Army by the Sergeant. Deposition of Lavetta Elk, 19 (Attach. as Ex. 1); Def.'s Answer, ¶ 4. On January 7, 2003, the Sergeant made a visit to Plaintiff's home. *Id*. at ¶ 9. On that day, Plaintiff entered a government vehicle, driven by the Sergeant, and departed with him. *Id*. at ¶ 10. During this car trip, the Sergeant kissed Plaintiff and touched her breasts against her will. Def.'s Answer, ¶ 12. Plaintiff contends that she resisted the advances of the Sergeant. Pl.'s Mem. of Contentions of Fact and Law, 2. After a short time, the Sergeant acquiesced to Plaintiff's protestations and drove her to a relative's house. Deposition of Lavetta Elk, 61.

On August 8, 2003, in nonjudicial criminal proceedings, conducted pursuant to Art. 15, Uniform Code of Military Justice ("UCMJ") (10 U.S.C. § 815), United States Army Lieutenant Colonel William Rosten found beyond a reasonable doubt that the Sergeant sexually assaulted Plaintiff on January 7, 2003, in violation of Art. 134, UCMJ (10 U.S.C. § 934), by kissing her and touching her breasts against her will. Def.'s Answer, ¶ 12. As a result of this finding, the Sergeant received a reduction in rank and loss of military pay. *Id*. at ¶ 2.[1]

Following January 7, 2003, Plaintiff made a limited number of visits to Kyle Mental Health and Pine Ridge Mental Health for treatment. DEF 519 (Attach as Ex. 2). For three or four months, she participated in a women's group at Changleska, Inc. *Id*. In addition, she

---

[1] As noted in Defendant's Memorandum of Contentions of Fact and Law, Defendant does not concede liability in this case, however, Defendant will not contest the findings arising from these nonjudicial criminal proceedings.

sought assistance from a minister and medicine man. *Id*. Plaintiff expended no funds in connection with these activities. Deposition of Lavetta Elk, 81-82. Furthermore, Plaintiff did not expend any funds on medications as a result of her encounter with the Sergeant. *Id*. Likewise, Plaintiff did not have any other additional costs or expenses, because of the assault. *Id*. at 82.

On February 3, 2005, Plaintiff filed suit against the United States for compensation under the "Bad Men" clause of the Treaty with the Sioux of April 29, 1868.[2] *See*, *generally*, Pl.'s Compl. Plaintiff's Complaint sought damages in the amount of $100,000,000.00 for alleged emotional and psychological injuries allegedly sustained as a direct and proximate result of these incidents, plus attorneys fees and costs. *Id*. Plaintiff also alleges that she is entitled to compensation for miscarriages caused by the stress associated with the assault.

In conjunction with the instant action, Dr. Mary D. Stephenson, MD, MSc, FACOG, examined Plaintiff's claim that "she had repeated miscarriages because of ongoing stress, resulting from an incident involving the [Sergeant] on January 7, 2003." Def.'s Expert Report of Stephenson (Attach. as Ex. 3), 2; Deposition of Lavetta Elk, 96-98. Dr. Stephenson, Director of the Recurrent Pregnancy Loss Program at the University of Chicago, has extensive experience in

---

[2] The "Bad Men" clause provides, in relevant part:

> If bad men among the whites, or among other people subject to the authority of the Untied States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington city, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also reimburse the injured person for the loss sustained.

Article I, Treaty with the Sioux of April 29, 1868, 15 Stat. 635.

the area of recurrent miscarriages. Def.'s Expert Report of Stephenson, 2. Dr. Stephenson currently serves as a Professor of Obstetrics and Gynecology, in the Section of Reproductive Endocrinology and Infertility, at the University of Chicago. *Id*. Previously, Dr. Stephenson founded the Recurrent Pregnancy Loss Program at the British Columbia's Women's Hospital & Health Centre in Vancouver, Canada. *Id*. She also is the Principal Investigator, working with other scientists throughout North America, on a randomized controlled trial investigating secondary recurrent miscarriage. *Id*. Presently, Dr. Stephenson consults with approximately 200-250 new patients for recurrent pregnancy loss on a yearly basis. *Id*. Accordingly, she is well qualified to offer testimony in this case.

Dr. Stephenson reviewed Plaintiff's medical records from "Aurora Medical Center-Kenosha from September 21, 2005 to February 17, 2006 and various medical records from November 4, 1987 to August 2, 2006, which include, but are not limited to, Women's Health Clinic Encounter, Pine Ridge Hospital and PCC Mental Health/Social Service records." Def.'s Expert Report of Stephenson, 3. Upon review of Plaintiff's medical records, Dr. Stephenson found that "[t]here is no statement in the medical records, from any health care professional that her miscarriages were due to stress." *Id*. at 4. Furthermore, Dr. Stephenson concluded that Plaintiff's miscarriages were most likely due to infection and a random chromosome error. *Id*. at 3, 4.

## II. ARGUMENT

As noted above, Plaintiff seeks damages in the amount of $100,000,000.00. Plaintiff, however, cannot demonstrate that she incurred any costs arising from the assault. Plaintiff also is not entitled to compensation stemming from allegedly stress-related miscarriages. Thus, an

order should be entered preventing Plaintiff from presenting any evidence of costs arising from the assault and any evidence stemming from allegedly stress-related miscarriages.

**A. Motion *in Limine* Standard.**

This Court has acknowledged that "[a] motion *in limine* is a recognized method under [RCFC] 16 and Fed. R. Civ. P. 16 for obtaining a pretrial order simplifying issues for trial." *White Mountain Apache Tribe v. United States*, 10 Cl. Ct. 115, 116 (1986), and "is a useful tool to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." *Baskett v. United States*, 2 Cl. Ct. 356, 367-68 (1983); *see Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986) (motion *in limine* is useful to “resolve issues which would otherwise 'clutter up' the trial"). Indeed, as this Court has previously acknowledged, the Court has a <u>duty</u> to exercise its power to exclude testimony or evidence in appropriate cases:

> There is no question under [RCFC] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. <u>Not only does this court have such power, it has a duty to exercise it in appropriate cases</u>. This power allows the court, *inter alia*, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. <u>Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence</u>.

*Baskett*, 2 Cl. Ct. at 359 (emphasis added).

**B. Because Plaintiff Did Not Incur Any Costs Arising From The Assault, She Should be Excluded From Presenting Evidence in Support of Costs.**

Plaintiff is not entitled to compensation for any costs arising from the assault. Thus, she should be excluded from presenting any evidence of such costs.

Plaintiff claims that she is entitled to damages for out-of-pocket expenses. DEF 501

(Attach. as Ex. 3). An examination of the evidence, however, demonstrates that Plaintiff did not incur any expenses associated with the assault. "It is axiomatic that a plaintiff bears the burden of providing evidence in support of her damages claim." *Jennings v. Rivers*, 394 F.3d 850, 853 (10th Cir. 2005) (discussing damages claim in sexual assault action); *Glenn v. Copeland*, 2006 WL 1662921 *2 (N.D. Fla. 2006) ("The burden rests upon Plaintiff to provide evidence supporting his claims of longterm physical and medical damages.").

Plaintiff did expend any funds on medical treatment, psychological counseling, therapy, medications or other assistance as a result of her encounter with the Sergeant. Deposition of Lavetta Elk, 81-82 (failing to identify any expenses associated with medical treatment, therapy, counseling, or medications ); *id.* (stating that Plaintiff had no other expenses because of the sexual assault) *see also* DEF 508 (Attach. as Ex. 4), DEF 519-20 (Attach. as Ex. 2) (failing to identify any costs incurred from any therapy, counseling, assistance, treatment, or medications); DEF 697 (Attach. as Ex. 5) (stating that if costs were incurred in connection with therapy, counseling, psychological or psychiatric treatment, it is Plaintiff's understanding that Indian Health Services paid for those costs and further stating that Plaintiff was not billed for such services); DEF 657 (Attach. as Ex. 6) (failing to identify any costs from medical treatment received in connection with Plaintiff's miscarriages).

Accordingly, it is clear that Plaintiff did not incur any costs arising from the assault. Thus, Plaintiff is not entitled to such compensation. Moreover, in order to "simplify[] issues for trial," Plaintiff should be excluded from presenting any evidence of costs arising from the assault. *White Mountain Apache Tribe*, 10 Cl. Ct. at 116. Such an order would serve to streamline the issues involved in the trial and conserve both the resources of the Court and the

parties.

**C. Because Plaintiff Is Not Entitled to Compensation Stemming From Allegedly Stress-Related Miscarriages, She Should Excluded From Presenting Evidence in Support of Such a Claim.**

Plaintiff's claim that she experienced miscarriages, because of the stress associated with the assault is without merit. Accordingly, Plaintiff is not entitled to compensation stemming from such miscarriages. Moreover, she should be excluded from presenting evidence in support of such a claim.

It is important to note that Plaintiff presents no evidence to support her claim for such compensation. Plaintiff's expert, Dr. Stephen P. Manlove, M.D., examined Plaintiff to assess the damage caused by her encounter with the Sergeant. Dr. Manlove's report, however, does not address Plaintiff's miscarriages. Likewise, Plaintiff has offered no medical records or other expert analysis that her miscarriages are connected to the assault. *See*, *e.g.*, Pl.'s Mem. of Contentions of Fact and Law. Thus, Plaintiff fails to meet the requisite burden of supporting her claim for compensation. *Jennings,* 394 F.3d at 853.

Moreover, Dr. Stephenson, who specializes in recurrent pregnancy loss, concluded that Plaintiff's miscarriages were most likely due to infection and a random chromosome error. Dr. Stephenson noted that Plaintiff's miscarriage of 16 week size, occurring in October 2003, was preceded by "a urinary tract infection and a sexually transmitted disease, chlamydia, which causes pelvic inflammatory disease." Def.'s Expert Report of Stephenson, 3. Dr. Stephenson explained that "both urinary tract infections and chlamydia are associated with miscarriage (fetal demise) of 10 to 20 week size." *Id*. at 5 (citations omitted). Dr. Stephenson found that

Plaintiff's "second documented pregnancy resulted in a miscarriage of less than 8 week size, in April 2005." *Id*. at 4. "In regard to miscarriages of 6-10 week size, approximately 50% are found to be due to random chromosome error; most commonly an extra chromosome (trisomy), a chromosome missing (monosomy) or a complete extra set of chromosomes (triploidy)." *Id*. at 9. Thus, Dr. Stephenson concluded that this miscarriage was most likely a result of an abnormal number of chromosomes. *Id*. at 4. Dr. Stephenson's conclusions are supported by the fact that "[t]here is no statement in [Plaintiff's] medical records, from any health care professional that her miscarriages were due to stress." *Id.* Consequently, Plaintiff's claim that she experienced miscarriages, because of the stress associated with the assault is unfounded. *See generally*, *Bond v. United States*, 47 Fed. Cl. 641, 647 (2000) (conclusory allegations unsupported by factual assertions will not withstand a motion to dismiss"); *see also Avia Group, Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F. 2d. 1557, 1560 (Fed. Cir. 1998) (summary judgment is appropriate where the plaintiff's allegations are merely colorable and not significantly probative).

Here, the Court has the ability "to define the issues, facts, and theories actually in contention and to weed out extraneous issues." *Baskett*, 2 Cl. Ct. at 359. Plaintiff is not entitled to compensation stemming from her allegedly stress-related miscarriages. Consequently, an order should be entered preventing Plaintiff from presenting any evidence in support of this claim. Such an order will "simplify[] issues for trial," prevent the record from being encumbered with irrelevant evidence, and conserve resources. *White Mountain Apache Tribe*, 10 Cl. Ct. at 116; *Baskett*, 2 Cl. Ct. at 367-68.

## III. CONCLUSION

Based on the aforementioned, Defendant respectfully requests that the Court enter an

order, *in limine*, to exclude Plaintiff from presenting any evidence of costs arising from the assault and any evidence stemming from allegedly stress-related miscarriages.

DATED: February 22, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Steven D. Bryant
STEVEN D. BRYANT
SARA E. COSTELLO
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0424 (phone)
(202) 305-0267 (fax)
steven.bryant@usdoj.gov

Of Counsel:

Major Lanny Acosta
U.S. Army Litigation Division
901 N. Stuart Street
4th Floor
Arlington, VA 22202

Sharon Pudwill
Department of Interior
Office of the Field Solicitor
Bishop Henry Whipple Federal Bldg.
1 Federal Drive, Room 686
Twin Cities, MN 55111