**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

(E-Filed February 22, 2008)

| | | |
|---|---|---|
| LAVETTA ELK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-186L |
| v. | ) | Judge Francis M. Allegra |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

DATED: February 22, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

________________________________
STEVEN D. BRYANT
SARA E. COSTELLO
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0424 (phone)
(202) 305-0267 (fax)
steven.bryant@usdoj.gov

Of Counsel:
Major Lanny Acosta
U.S. Army Litigation Division

Sharon Pudwill
Department of Interior

# TABLE OF CONTENTS

I. Defendant's Contentions of Fact . . . . . . . . . . 2

II. Procedural History . . . . . . . . . . 4

III. Defendant's Contentions of Law . . . . . . . . . . 5

IV. Plaintiff is Not Entitled to the Compensation She Seeks . . . . . . . . . . 6

V. Conclusion . . . . . . . . . . 11

## TABLE OF AUTHORITIES

### CASES

Cosmo Const. Co. v. United States,
196 Ct. Cl. 463 (Ct. Cl. 1971) . . . . . . . . . . 6

Doe v. City of Waterbury,
453 F. Supp. 2d 537 (D. Conn. 2006 ) . . . . . . . . . . 5

Elk v. United States,
70 Fed. Cl. 405 (Fed. Cl. 2006) . . . . . . . . . . 4, 5

Fernandez v. Standard Fire Ins. Co.,
44 Conn. App. 220, 688 A.2d 349 (1997) . . . . . . . . . . 5

Glenn v. Copeland,
2006 WL 1662921 *2 (N.D. Fla. 2006) . . . . . . . . . . 5

Jennings v. Rivers,
394 F.3d 850 (10th Cir. 2005) . . . . . . . . . . 5

Martinmaas v. Engelmann,
612 N.W. 2d. 600 (S.D. 2000) . . . . . . . . . . 5

Mitchell v. United States,
229 Ct. Cl. 1, 664 F.2d 265 (1981) (en banc), aff'd by, United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . 6

Puritan Associates v. United States,
215 Ct. Cl. 976 (1977) . . . . . . . . . . 6-8, 10, 11

### STATUTES

Article I, Treaty with the Sioux of April 29, 1868, 15 Stat. 635 . . . . . . . . . . 5

Uniform Code of Military Justice ("UCMJ")
10 U.S.C. § 815 . . . . . . . . . . 4
10 U.S.C. § 934 . . . . . . . . . . 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

(E-Filed February 22, 2008)

| | | |
|---|---|---|
| LAVETTA ELK,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-186L<br>Judge Francis M. Allegra |

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

On January 25, 2008, Plaintiff Lavetta Elk ("Plaintiff") filed her pretrial Memorandum of Contentions of Fact and Law. Pursuant to RCFC, Appendix A, ¶ 14(b), Defendant, the United States of America ("Defendant"), hereby submits its responsive pretrial Memorandum of Contentions of Fact and Law.

In this case, Plaintiff brings suit against Defendant for compensation under the "Bad Men" clause of the Treaty with the Sioux of April 29, 1868. Specifically, Plaintiff asserts that she was sexually assaulted, on January 7, 2003, by Joseph P. Kopf, United States Army Staff Sergeant ("Sergeant"). Plaintiff seeks damages in the amount of $100,000,000.00 for alleged emotional and psychological injuries allegedly sustained as a direct and proximate result of this incident, plus attorneys fees and costs. Defendant, however, submits that Plaintiff cannot prove that she is entitled to damages in the amount of $100,000,000.00. At trial, as set forth below, the evidence will show that Plaintiff clearly is not entitled to the plainly unreasonable damages she seeks.

## I. Defendant's Contentions of Fact

Plaintiff is a member of the Oglala Sioux Tribe. Def.'s Answer, ¶ 1. Plaintiff was interested in joining the United States Army; and, in 2002, Plaintiff was recruited to join the Army by the Sergeant. Deposition of Lavetta Elk, 19 (Attach. as Ex. 1); Def.'s Answer, ¶ 4. On January 7, 2003, the Sergeant made a visit to Plaintiff's home. *Id.* at ¶ 9. On that day, Plaintiff entered a government vehicle, driven by the Sergeant, and departed with him. *Id.* at ¶ 10. Plaintiff alleges that they turned off the main road and parked behind a hill. Deposition of Lavetta Elk, 53.

In her deposition, Plaintiff described the Sergeant's romantic overtures that followed. According to Plaintiff, the Sergeant stated that he wanted a chance to talk to her, because he noticed that she had been sad recently and that "he wanted to know what he could do to help make it better." *Id.* at 54. Plaintiff further alleges that the Sergeant asked "if [Plaintiff] liked him ... that Plaintiff was the only one that understood him and ... made him happy." *Id.* Plaintiff stated that the Sergeant said he wanted to take care of her and make her happy. *Id.*

Plaintiff alleges that the Sergeant then put his arm around her and tried to kiss her. *Id.* According to Plaintiff, she told him to stop and pushed him away, and the Sergeant responded, "come on, I thought you liked me." *Id.* Plaintiff further alleges that against her will the Sergeant proceeded to touch her breasts under her shirt and sweater, and rub his hand between her legs on the outside of her pants. *Id.* at 55; Def.'s Answer, ¶ 12. According to Plaintiff, the Sergeant acquiesced to Plaintiff's protestations when she started crying, and moved over to the driver's seat. Plaintiff did not suffer any bruises, red marks, or scratches. Deposition of Lavetta Elk, 55, 57-58.

Plaintiff stated that the Sergeant then said "he thought it was what [Plaintiff] wanted." *Id.* at 61-62. Plaintiff explained that "what he was doing was wrong." *Id.* at 56-57. According to Plaintiff, the Sergeant asked "how it was wrong." *Id.* at 57. Plaintiff responded "that it was wrong because he was my [Army] recruiter, because he was married, and he had kids." *Id.* According to Plaintiff, the Sergeant responded that it did not matter because he was going through a divorce. *Id.*

Plaintiff stated that she wanted to go home, and the Sergeant began driving again. *Id.* at 57, 59. According to Plaintiff, she indicated that she needed to go to the bathroom, so the Sergeant stopped at a convenience store. *Id.* at 59. Plaintiff alleges that she did not ask the Sergeant to leave her at the convenience store because she "didn't have any place to go [and] didn't know what to do." *Id.* at 61. Plaintiff and the Sergeant then returned to his car and, at Plaintiff's request, the Sergeant drove Plaintiff to her cousin's house, approximately 10 minutes away. *Id.*

After arriving at her cousin's house, Plaintiff reported the assault to the Bureau of Indian Affairs police. Pl.'s Mem. of Contentions of Fact and Law, 2; *see also* DEF 91-95 (Attach. as Ex. 2). In speaking with the Bureau of Indian Affairs Special Agent, Plaintiff denied that the assault involved forcible intercourse rape; rather, she reported that the Sergeant attempted to kiss her and touch her through her clothing. DEF 91. During the interview, Plaintiff appeared calm. *Id.* She reported no injuries to the Bureau of Indian Affairs police. DEF 95. She also reported that the Sergeant made no threats of harm during the assault. DEF 94. In addition, none of Plaintiff's clothes were torn during the assault. Deposition of Lavetta Elk, 55. The assault left no red marks, bruises, or scratches on Plaintiff's body. *Id.* Further, the Sergeant's advances left

no physical marks on Plaintiff's body at all. *Id.* at 57-58.

On August 8, 2003, in nonjudicial criminal proceedings, conducted pursuant to Art. 15, Uniform Code of Military Justice ("UCMJ") (10 U.S.C. § 815), United States Army Lieutenant Colonel William Rosten found beyond a reasonable doubt that the Sergeant sexually assaulted Plaintiff on January 7, 2003, in violation of Art. 134, UCMJ (10 U.S.C. § 934), by kissing her and touching her breasts against her will. Def.'s Answer, ¶ 12. As a result of this finding, the Sergeant was punished with a reduction in rank from Staff Sergeant to Sergeant and loss of military pay. *Id.* at ¶ 2. Defendant does not concede liability in this case, however, Defendant will not contest the findings arising from these nonjudicial criminal proceedings.

## II. Procedural History

On February 3, 2005, Plaintiff filed suit against the United States for compensation under the "Bad Men" clause of the Treaty with the Sioux of April 29, 1868. *See generally*, Pl.'s Compl. Plaintiff's Complaint sought damages in the amount of $100,000,000.00 for alleged emotional and psychological injuries allegedly sustained as a direct and proximate result of the assault, plus attorneys fees and costs. *Id.*

On April 19, 2005, Defendant filed a Motion to Dismiss asserting that Plaintiff failed to fully exhaust her administrative remedies before filing her Complaint. On January 20, 2006, the Court denied this motion finding that the "Bad Men" clause did not require exhaustion of administrative remedies. *Elk v. United States*, 70 Fed. Cl. 405, 411-12 (Fed. Cl. 2006). The Court further held that even if exhaustion of administrative remedies were required, Plaintiff has effectively met her burden, given the fact that the Army denied her Federal Tort Claim Act claim, the Department of Justice elected not to prosecute the Army Sergeant, and the Department

of the Interior failed to act on the claim under the Treaty. *Id.* at 411.

After the Court ruled on its Motion to Dismiss, Defendant filed its answer on February 17, 2006. The parties have completed discovery. On October 25, 2007, the Court stated that trial shall commence on April 28, 2008 in Rapid City, South Dakota. On January 25, 2008, Plaintiff filed her Memorandum of Contentions of Fact and Law, Exhibit list, and Witness list. In conjunction with this Memorandum, Defendant files its Exhibit list, Witness list, and Motions *in Limine*.

## III. Defendant's Contentions of Law

The parties agree that the "Bad Men" clause provides, in relevant part:

> If bad men among the whites, or among other people subject to the authority of the Untied States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington city, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also reimburse the injured person for the loss sustained.

Article I, Treaty with the Sioux of April 29, 1868, 15 Stat. 635.

The elements of the intentional tort of sexual assault, are: (1) harmful or offensive contact with a person; (2) intended to cause the person such contact; and (3) that results from an act. *Doe v. City of Waterbury*, 453 F. Supp. 2d 537 (D. Conn. 2006 ); *see also Fernandez v. Standard Fire Ins. Co.*, 44 Conn. App. 220, 224, 688 A.2d 349 (1997); *Martinmaas v. Engelmann*, 612 N.W. 2d. 600, 618 (S.D. 2000) (Amundson, J., dissenting) (discussing intentional tort of sexual assault). "It is axiomatic that a plaintiff bears the burden of providing evidence in support of her damages claim." *Jennings v. Rivers*, 394 F.3d 850, 853 (10th Cir. 2005) (discussing damages claim in sexual assault action); *Glenn v. Copeland*, 2006 WL 1662921 *2 (N.D. Fla. 2006) ("The burden rests upon Plaintiff to provide evidence supporting

his claims of longterm physical and medical damages.").

Here, Plaintiff's claim is founded on the "Bad Men" clause set forth in the Treaty with the Sioux of April 29, 1868. As noted above, the Treaty provides that reimbursement will be made for the "loss sustained" by the injured person. Accordingly, absent establishing proof of the damages for the loss, there can be no recovery. *Cosmo Const. Co. v. United States*, 196 Ct. Cl. 463 (Ct. Cl. 1971) ("[T]here must be *some* evidence of damage to support a finding on liability.") (emphasis in original); *Puritan Associates v. United States*, 215 Ct. Cl. 976, 978 (1977) (the "plaintiff as part of its proof of entitlement, must show it was damaged to some extent").[1]

## IV. Plaintiff is Not Entitled to the Compensation She Seeks

As noted above, Plaintiff seeks damages in the amount of $100,000,000.00 for alleged emotional and psychological injuries allegedly sustained as a direct and proximate result of these incidents, plus attorneys fees and costs. The evidence before the Court, however, will show that Plaintiff is not entitled to the extensive damages she seeks.

In conjunction with the instant action, Plaintiff was examined by Dr. Mark J. Mills, J.D., M.D, a board certified forensic psychiatrist. A review of Dr. Mills' *curriculum vita* makes clear that he has extensive psychiatric experience. *See* Def.'s Expert Report of Mills (Attach. as Ex.

---

[1] Defendant notes that even in a breach of trust action, *Mitchell v. United States*, the Court of Claims held that the types of damages permitted for a breach of a fiduciary duty do <u>not</u> include damages that are not a direct result of the alleged breach. 229 Ct. Cl. 1, 664 F.2d 265, 273-74 (1981) (*en banc*), *aff'd by, United States v. Mitchell*, 463 U.S. 206 (1983) (emphasis added). Accordingly, the Court of Claims excluded entitlement for "other types of damages or compensation: indirect or consequential business, economic, or personal damages due to the loss (total or partial) of their property, or personal, psychological, or social harm experienced by the Indian owners or the tribe <u>as a consequence</u> of federal mismanagement of their property." *Id.* (emphasis added).

3). Dr. Mills served as chief of psychiatry for the largest psychiatric hospital in North America. Def.'s Expert Report of Mills, 2. Prior to holding that position, Dr. Mills was the chief of psychiatric evaluation for a large Veteran's Administration hospital and Commissioner of Mental Health for the Commonwealth of Massachusetts. *Id.* Since becoming a forensic psychiatrist, Dr. Mills has consulted on several dozen cases of claimed or actual sexual assault on behalf of various plaintiffs and defendants. *Id.* Along with his work as a forensic psychiatrist, Dr. Mills also is a professor of clinical psychiatry at Columbia University and an adjunct professor at New York Medical College, St. Vincent's Hospital. Def.'s Expert Report of Mills. Accordingly, he is well qualified to offer testimony in this case.

Dr. Mills' testimony will confirm that Plaintiff is not entitled to the damages she requests. Dr. Mills will explain that Plaintiff "appears to be a manipulative and/or unreliable witness." Def.'s Expert Report of Mills, 3. Dr. Mills' conclusion is based, in part, on the results of two psychological tests which he administered to Plaintiff.[2] Plaintiff's psychological testing revealed "a pattern of exaggeration, manipulativeness and an inaccurate attempt to portray herself as the victim of traumatic stress." *Id.* at 4. Dr. Mills observed that "exaggeration is evident in her interviews, depositions, medical records, and psychological testing and is crucial in assessing [Plaintiff's] credibility in her lawsuit." Def.'s Rebuttal Report (Attach. as Ex. 4), 2. Dr. Mills will demonstrate that Plaintiff "consistently minimizes or fails to recollect other important stressors during the period in question and focuses almost exclusively on the incident with [the Sergeant]." Def.'s Expert Report of Mills, 3. During this time period, Plaintiff experienced the death of several grandparents, disappointment about not being able to enter the

[2] Specifically, Dr. Mills utilized the Minnesota Multiphasic Personality Inventory, Second Edition and the Personality Assessment Inventory.

Army, chronic difficulties in finding employment, emotional strains associated with needing to live with her parents, concerns about sexually transmitted diseases, and recurrent miscarriages. *Id.* at 5-6. Dr. Mills will further explain that Plaintiff "had a history of clinically-significant depression prior to January 7, 2003, that was largely untreated." Def.'s Rebuttal Report, 2; *see also* DEF 662 (Attach. as Ex. 5) (admitting that Plaintiff sought professional medical and/or psychological assistance for depression on or about April 2002); DEF 691 (Attach. as Ex. 6) (Prior to January 6, 2003, "I was diagnosed with depression."). Such findings demonstrate that Plaintiff's request for extensive damages is unreasonable.

In addition, Dr. Mary D. Stephenson, MD, MSc, FACOG, examined Plaintiff's claim that "she had repeated miscarriages because of ongoing stress, resulting from an incident involving the [Sergeant] on January 7, 2003." Def.'s Expert Report of Stephenson (Attach. as Ex. 7), 2; Deposition of Lavetta Elk, 96-98. Dr. Stephenson, Director of the Recurrent Pregnancy Loss Program at the University of Chicago, has extensive experience in the area of recurrent miscarriages. Def.'s Expert Report of Stephenson, 2. Dr. Stephenson currently serves as a Professor of Obstetrics and Gynecology, in the Section of Reproductive Endocrinology and Infertility, at the University of Chicago. *Id.* Previously, Dr. Stephenson founded the Recurrent Pregnancy Loss Program at the British Columbia's Women's Hospital & Health Centre in Vancouver, Canada. *Id.* She also is the Principal Investigator, working with other scientists throughout North America, on a randomized controlled trial investigating secondary recurrent miscarriage. *Id.* Presently, Dr. Stephenson consults with approximately 200-250 new patients for recurrent pregnancy loss on a yearly basis. *Id.* Consequently, she is especially qualified to offer testimony in this case.

Dr. Stephenson reviewed Plaintiff's medical records from "Aurora Medical Center-Kenosha from September 21, 2005 to February 17, 2006 and various medical records from November 4, 1987 to August 2, 2006, which include, but are not limited to, Women's Health Clinic Encounter, Pine Ridge Hospital and PCC Mental Health/Social Service records." Def.'s Expert Report of Stephenson, 3. Based upon review her review of Plaintiff's medical records, Dr. Stephenson will show that "[t]here is no statement in the medical records, from any health care professional that her miscarriages were due to stress." *Id.* at 4. Furthermore, Dr. Stephenson will explain that Plaintiff's miscarriages were most likely due to infection and a random chromosome error.[3] *Id.* at 3, 4. Accordingly, Plaintiff cannot use this claim to bolster her claim for damages.

Moreover, Plaintiff's estimation of her damages is speculative and uncertain. Plaintiff's Memorandum of Contentions of Fact and Law includes no factual contentions regarding how she calculated or estimated the figure of $100,000,000.00. In addition, it provides no summary of how Plaintiff intends to prove that she is entitled to such a sum. Instead, the Memorandum contains only the assertions that Plaintiff "has suffered and continues to suffer from severe anxiety, depression, shame, humiliation, the inability to lead a normal life, and physical, psychological and emotional trauma" and that her "injuries are persistent, permanent and debilitating in nature." Pl.'s Mem. of Contentions of Fact and Law, 3.

Likewise, Plaintiff has not been able to identify any expenses associated with the assault. Deposition of Lavetta Elk, 81-82. She did not expend any funds on medical treatment,

---

[3] Plaintiff stated that she miscarried five times before the birth of her son in 2006. Deposition of Lavetta Elk, 96. Dr. Stephenson, however, found that Plaintiff only experienced two miscarriages. Def.'s Expert Report of Stephenson, 3.

psychological counseling, or medications as a result of this incident. *Id.* In keeping with Plaintiff's lack of expenses for any sort of treatment, the evidence will show that Plaintiff has not adequately attempted to mitigate her psychological harm or injury. A review of Plaintiff's medical records show that she was encouraged to pursue psychological counseling and therapy. Plaintiff, however, made little attempt to receive such treatment.[4] In her deposition, Plaintiff also explained that she declined to take the medications prescribed to help with her depression and insomnia. *Id.* at 70.

Furthermore, it is apparent that Plaintiff has experienced a number of other difficult events which have affected her psychologically. As noted above, Plaintiff estimates that she suffered five miscarriages in less than four years. Deposition of Lavetta Elk, 96. During her deposition, Plaintiff acknowledged that the miscarriages caused her to feel "like a failure." *Id.* at 94. In addition, both of Plaintiff's parents emphasized the many challenges facing individuals living on the Pine Ridge reservation. Deposition of Emerson Elk, 16-17 (Attach. as Ex. 8); Deposition of Jerilyn Elk 12-13 (Attach. as Ex. 9). Indeed, high levels of unemployment, alcoholism, and suicide are present at Pine Ridge.

In addition, Plaintiff's expert, Dr. Stephen P. Manlove, M.D. provides little support for her extensive claim for damages. In his report, Dr. Manlove stated that it is his opinion that Plaintiff has "Posttraumatic Stress Disorder, Chronic as a result of the event." At trial, however, Dr. Mills will testify that Dr. Manlove "takes some of [Plaintiff's] statements at face value even when they are evidently inaccurate." Rebuttal Report, 1. Dr. Mills will also establish that Dr.

[4] Following January 7, 2003, Plaintiff made a limited number of visits to Kyle Mental Health and Pine Ridge Mental Health for treatment. DEF 519. For three or four months, she participated in a women's group at Changleska, Inc. *Id.* In addition, she sought assistance from a minister and medicine man. *Id.*

Manlove's evaluation fails to acknowledge that Plaintiff requested medication and therapy for a depressive disorder before the assault. *Id.* Dr. Mills will also explain that Dr. Manlove does not, forensically, take into account the significant losses in Plaintiff's life "leading up to and following the incident with the [Sergeant]; nor does he acknowledge the amount of [Plaintiff's] exaggeration." *Id.* at 2.

Finally, it is also important to note that the evidence will demonstrate that Plaintiff has achieved a number of positive milestones in the past few years. For example, the evidence will show that Plaintiff graduated from the Milwaukee Career College. Deposition of Lavetta Elk, 84. She received the necessary training to work as a Certified Nursing Assistant. *Id.* at 85. During this time, Plaintiff also got married and had a son. *Id.* at 89. In her deposition, Plaintiff stated that her son brought her great happiness. *Id.* at 92. Plaintiff further reports that her relationship with her parents has grown closer in the past few years. *Id.* at 91. In addition, during this period, Plaintiff stopped drinking alcohol. *Id.* at 92-93. The fact that Plaintiff has made these positive strides in spite of the assault also weighs against her request for unreasonably excessive damages.

## V. Conclusion

Plaintiff bears the burden of demonstrating that she is entitled to her damage request of $100,000,000.00 for alleged emotional and psychological injuries allegedly sustained as a direct and proximate result of the assault, plus attorneys fees and costs. For the reasons stated above, as well as based on the evidence to be presented at trial, Defendant respectfully requests that the Court find that Plaintiff is not entitled to the extensive damages she seeks.

DATED: February 22, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Steven D. Bryant

STEVEN D. BRYANT
SARA E. COSTELLO
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0424 (phone)
(202) 305-0267 (fax)
steven.bryant@usdoj.gov

Of Counsel:

Major Lanny Acosta
U.S. Army Litigation Division
901 N. Stuart Street
4th Floor
Arlington, VA 22202

Sharon Pudwill
Department of Interior
Office of the Field Solicitor
Bishop Henry Whipple Federal Bldg.
1 Federal Drive, Room 686
Twin Cities, MN 55111