**FORENSIC SCIENCES MEDICAL GROUP, P.C.**

**4814 Foxhall Crescent, N.W.**
**Washington, District of Columbia 20007**
**Phone (202) 333-3533 Fax (202) 333-3588**
**mjmills@forensicsciences.com**

**Mark J. Mills, J.D., M.D.**
**Susan E. Mills, R.N., M.P.H.**

**Leonard Goodstein, Ph.D.**
**Wilfred G. van Gorp, Ph.D.**

**C O N F I D E N T I A L**

June 18, 2007

**Via Electronic Mail**

Sara E. Culley, Esquire
Trial Attorney
U.S. Department of Justice
Environmental and Natural Resources Division
Natural Resources Section
Washington, District of Columbia 20044

***Re: Lavetta Elk v. The United States of America, 05-186L (Fed. Cl.)***

Dear Ms. Culley:

You asked that I read and consider the report (apparently dated April 20, 2007 judging from the filing note at the end of it) Stephen P. Manlove, M.D., and comment where appropriate.

After reviewing the report of his forensic psychiatric evaluation, it is my opinion that Dr. Manlove appears to view Ms. Elk more as a clinical psychiatrist would, than as (ideally) a forensic psychiatrist should. It seems that he takes some of Ms. Elk's statements at face value even when they are evidently inaccurate. For example, in her deposition, Ms. Elk stated that she did not want to take any medication for her depression (page 85); however, her medical records reveal that she was taking Prozac for two months and that her medication was changed to Effexor XR for an additional four months after the incident involving Sergeant Joseph Kopf. Dr. Manlove does not identify the inconsistency associated with Ms. Elk's statements concerning her attitude toward medication and her actions of taking medication. This somewhat inaccurate representation of the evidence continues when Dr. Manlove does not note in his report that Ms. Elk had asked for psychiatric medication well before January 7, 2003. In his evaluation of Ms. Elk's psychiatric history, Dr. Manlove does not include that at the end of her high school career, Ms. Elk requested medication and therapy from Dr. Wortel concerning a depressive disorder NOS (April 17,

**FORENSIC SCIENCES MEDICAL GROUP, P.C.**



2002). These records demonstrate that Ms. Elk had had a history of clinically-significant depression prior to January 7, 2003, that was largely untreated[1].

Ms. Elk's exaggeration is not only apparent in her interviews and deposition, but is also in her psychological testing, as I observed in my report of May 29, 2007. Her MMPI-II and PAI are an objective way to interpret her test-taking attitude. Ms. Elk's greatly elevated F, F(B), and F(P) suggest one of three hypotheses, one of which, that of her exaggeration, is not discussed by Dr. Manlove. The first possibility, mentioned by Dr. Manlove, is that Ms. Elk has difficulty reading and is not well educated; however, one knows this to be incorrect interpretation based on the fact that she received a 4-year scholarship to Rockhurst University and easily graduated high school. The second possibility is that Ms. Elk was confused or suffering from a psychosis during the testing. I was with Ms. Elk during the administration of these tests, and she remained calm and coherent (clearly not psychotic) throughout the testing thus rendering that interpretive hypothesis inapposite. The third explanation of the elevated "faking" scales is that Ms. Elk was exaggerating her distress during her testing, which suggests that she may well be doing the same in her lawsuit. By exclusion, this hypothesis is the correct one, a fact that Dr. Manlove should have discussed.

As you know, it is apparent that Ms. Elk has suffered significant loses in her life: three of her four grandparents dying, her uncle's suicide, her boyfriend's suicide, and the claimed five miscarriages that occurred before and after the alleged incident with Sgt. Kopf. In my professional experience, that Ms. Elk makes (relatively) light of all the events that occurred before and after the incident involving Sgt. Kopf. Dr. Manlove, seemingly, does not, forensically, take into account these events leading up to and following the incident with Sgt. Kopf; nor does he acknowledge the amount of Ms. Elk's exaggeration. That exaggeration is evident in her interviews, depositions, medical records and psychological testing and is crucial in assessing Ms. Elk's credibility in her lawsuit.

If you wish additional information, please let me know.

Sincerely,

Mark J. Mills, J.D., M.D.

---

[1] Ms. Elk did not keep her scheduled appointment with Dr. Wortel on June 11, 2002.