# DEFENDANT'S EXHIBIT 1

STATE OF SOUTH DAKOTA )
:SS
COUNTY OF MINNEHAHA )

Diana Ryan, being duly sworn, deposes and states:

1. I am currently an Assistant U.S. Attorney (AUSA) serving as the designated Civil Chief for the U.S. Attorney's Office in the District of South Dakota. I have been an AUSA in the South Dakota U.S. Attorney's Office for approximately 19 years.

2. The U.S. Attorney's Office handles tort cases involving allegations of sexual assault committed by a federal employee. I have represented the United States of America in many of those actions and am familiar with the damages awarded against the United States of America by the federal district court judges or in settlements made by the U. S. Attorney's Office.

3. I was asked to prepare a summary of the damage awards from past sexual assault cases filed against the government in the District of South Dakota based upon my knowledge and records kept in our office and the Clerk of Courts.

4. Attached to my affidavit is Exhibit 1, which consists of certified copies of documents in the case of *Theresa Imitates Dog, Guardian Ad Litem on Behalf of her Minor Daughter, Celeste Imitates Dog, Tanya*

*Hernandez, Viola Hernandez and Shirley Salway v. United States of America*, Civ. 96-5044, U.S. District Court, District of South Dakota, Western Division. In the Complaint, the plaintiffs accuse three tribal police officers of stopping their vehicle without probable cause and sexually assaulting them, spraying them with mace, and placing them under arrest in an area where the officers lacked jurisdictional authority to make an arrest. The settlement agreements with those plaintiffs are also contained in Exhibit 1, which show the settlement amounts were: Viola Hernandez, $3,000; Teresa and Celeste Imitates Dog, $2,275.00; Shirley Salway, $5,805.00; and Tanya Hernandez $4,687.50.

5. Attached to my affidavit is Exhibit 2, which consists of certified copies of documents in *Geraldine White Butterfly, Guardian Ad Litem of Janelle White Butterfly*, Civ. 97-5075, U.S. District Court, District of South Dakota, Western Division. The Complaint alleges that a tribal reserve officer, while on duty, arrested the 14 year old juvenile and instead of taking her to jail, had consentual sex with her instead. The case was settled for $90,000.00 (ninety thousand dollars), which money was used to buy an annuity provide payments of $630.00 per month for ten years to the minor plaintiff.

6. Attached to my affidavit is Exhibit 3, which consists certified copies of documents in *Melanie Williams v. United States of America, acting*

*through the Department of the Interior, Bureau of Indian Affairs and Rio Lunderman*, Civ. 98-3018, U.S. District Court, District of South Dakota, Central Division. The complaint alleges that while the plaintiff was incarcerated in the tribal jail, a jailer forcibly raped her. This case was settled for the sum of $1,000.00.

7. Attached to my affidavit is Exhibit 4, which consists of certified copies of documents in *Rodger Red Elk, Guardian Ad Litem on Behalf of his Minor Daughter, Melinda Red Elk, and his minor Grandchild, Taylor Red Elk, and Malinda Red Elk, On Behalf of Herself and As Guardian Ad Litem for her son, Taylor Red Elk v. United States of America*, Civ. 92-5100, U.S. District Court, District of South Dakota, Western Division. The Complaint alleges that a tribal police officer repeatedly picked up the thirteen year old plaintiff for sexual intercourse, during which she became pregnant. One of these sexual acts occurred in the presence of another officer. This case was tried to the Court, and U.S. District Judge Andrew W. Bogue who found that the educational/vocational goals were interrupted as the result of the pregnancy and that she suffered substantial discomfort throughout her pregnancy, and mental anguish both before and after the birth of her son. The Court held that a reasonable award for all of the damages suffered by Melinda is $100,000 (one hundred thousand dollars).

8. Attached to my affidavit is Exhibit 5, which consists of certified copies of documents in *Debra St. John v. United States of America, acting through the Bureau of Indian Affairs*, Civ. 97-3051, U.S. District Court, District of South Dakota, Central Division. The Plaintiff alleged in her complaint that her ex-husband, while on duty as a Bureau of Indian Affairs police officer, arrested and jailed her, and then removed her from jail, taking her out into the country where he forcibly raped her. The case was tried to the court, who found for the Defendant as to the alleged sexual assault, but found for the plaintiff as to the unlawful arrest. The court awarded $3,000.00 in damages to the plaintiff, plus costs. The decision was affirmed on appeal.

Dated this 24th day of June, 2008.

Diana Ryan

Diana Ryan
Chief, Civil Division
U.S. Attorney's Office
325 S. 1st Avenue, Suite 300
P.O. Box 2638
Sioux Falls, SD 57101-2638
605.330.4400
605.330.4402 fax
Diana.Ryan@usdoj.gov

Subscribed and sworn to before me this 24th day of June, 2008.

Kim Kel 10.19.09

Notary Public - South Dakota

# RYAN DECLARATION
# EXHIBIT 1

FILED
MAY 29 1996
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| THERESA IMITATES DOG, Guardian Ad Litem on Behalf of Her Minor Daughter, CELESTE IMITATES DOG, TANYA HERNANDEZ, VIOLA HERNANDEZ, and SHIRLEY SALWAY, Plaintiffs, | ) | File #CIV 96-5044 |
| vs. | ) | COMPLAINT |
| UNITED STATES OF AMERICA, Defendant. | ) | |

## PRELIMINARY ALLEGATIONS

I.

This action arises and this Court has jurisdiction under the Federal Tort Claims Act of 1948, 62 Stat. 982, 28 U.S.C., §1343(a)(4), 1346(b), and 2671 et seq., and Public Law 101-512(1990).

II.

Plaintiffs Theresa Imitates Dog, Guardian Ad Litem on behalf of her minor daughter, Celeste Imitates Dog, Viola Hernandez, and Tanya Hernandez, reside in Martin, South Dakota, within the jurisdiction of this Court.

III.

Plaintiff Shirley Salway resides in Sturgis, South Dakota, within the jurisdiction of this Court.

UNITED STATES OF AMERICA } ss
DISTRICT OF SOUTH DAKOTA }
I, JOSEPH HAAS, Clerk of the United States District Court for the District of South Dakota, hereby certify that the above and foregoing is a true copy of the original now on file in my office.
Dated: 6/20/08
JOSEPH HAAS, Clerk
By Sandra Thuelen
Deputy

IV.

At all relevant times herein mentioned, the Defendant, by and through its Department of the Interior, Bureau of Indian Affairs, contracted with the Oglala Sioux Tribe and its Public Safety Commission pursuant to 25 U.S.C. § 450, et seq., Indian Self Determination Act, to provide law enforcement services on the Pine Ridge Indian Reservation.

V.

At all relevant times, the Oglala Sioux Tribe and its Public Safety Commission operated a police department on the Pine Ridge Indian Reservation and employed numerous employees. In doing so, and committing the acts alleged herein and in omitting to do all things alleged herein, the Oglala Sioux Tribe, its Public Safety Commission, and all of its employees were performing functions under the contract entered into pursuant to 25 U.S.C. § 450 et seq.

VI.

At all relevant times, Glen Gibbons, Norman Rogers, and Charles Cummings were employees of the Oglala Sioux Tribe and its Public Safety Commission as law enforcement or investigative officers.

VII.

Under the provision of Public Law 101-512, the Oglala Sioux Tribe, its Public Safety Commission, and Public Safety Commission employees are deemed, for the purposes of the Federal Tort Claims Act, to be part of the Bureau of Indian Affairs in the

United States Department of Interior while either carrying out any such contract, or in the case of employees, while acting while within the scope of their employment.

VIII.

On or about February 19, 1995, the above-mentioned Plaintiffs were passengers in a vehicle driven by Viola Hernandez. The vehicle and passengers had been in Martin, Bennett County, South Dakota, a town located outside of the Oglala Sioux Reservation and outside tribal jurisdiction. The vehicle was stopped without probable cause by Oglala Sioux Tribal Law Enforcement Officer Norman Rogers immediately north of Martin, South Dakota, in an area which is outside tribal jurisdiction. Subsequently tribal police officers Glen Gibbons and Charles Cummings joined Officer Rogers at the scene of the arrest.

IX.

Officers Gibbons, Rogers, and Cummings arrested the Plaintiffs for various violations of the Tribal Code, including curfew violation, liquor violations, disorderly conduct, and driving under the influence. That said violations did not occur within the boundaries of the Oglala Sioux Reservation. That the above-mentioned Plaintiffs were taken from off of the reservation onto the reservation and jailed in the tribal police station in Kyle, South Dakota.

X.

Tribal Officers Norman Rogers, Charles Cummings, and Glen Gibbons were, at all times alleged, law enforcement officers and employees of the Oglala Sioux Tribe and its Public Safety Commission and were acting in the course and the scope of their employment as law enforcement officers.

XI.

If Defendants were private persons, they would be liable to each Plaintiff in accordance with the laws of South Dakota and the Oglala Sioux Tribe.

XII.

On or about August 23, 1995, each Plaintiff filed a claim for administrative settlement with the Bureau of Indian Affairs as required by 28 U.S.C. 2675 in the amounts previously set forth. That more than six months has elapsed since demand was made and since service was admitted by the Bureau of Indian Affairs, and no action has been taken by said Bureau of Indian Affairs.

COUNT I - SEXUAL ASSAULT

XIII.

Plaintiffs reallege paragraphs I through X above as though set forth fully herein.

XIV.

As a result of the intentional and/or reckless actions of the Defendant's employee, Oglala Sioux Tribal Law Enforcement Officer, Glen Gibbons, the Plaintiff, Shirley Salway, was damaged as set forth in paragraph XXVII below.

COUNT II. - ASSAULT

XV.

Plaintiff realleges paragraphs I through X above as though set forth fully herein.

XVI.

The Plaintiffs, Shirley Salway and Theresa Imitates Dog, on behalf of her daughter, Celeste Imitates Dog, were assaulted and had a battery committed upon them by the Defendants, Glen Gibbons and Norman Rogers.

XVII.

As a direct and proximate result of the actions of the Defendants, Plaintiffs Shirley Salway and Theresa Imitates Dog, Guardian Ad Litem on behalf of her minor daughter, Celeste Imitates Dog, have incurred pain and suffering, emotional distress, and were damaged as set forth in paragraph XXVII below.

COUNT III - FALSE IMPRISONMENT

XVIII.

Plaintiffs reallege paragraphs I through X above as though set forth fully herein.

XIX.

The Plaintiffs, Shirley Salway, Theresa Imitates Dog, Guardian Ad Litem on behalf of her minor daughter, Celeste Imitates Dog, Tanya Hernandez, and Viola Hernandez, were falsely imprisoned by the Defendants, Glen Gibbons, Norman Rogers, and Charles Cummings, in that the Defendants had no authority nor jurisdiction to arrest and detain the above-mentioned Plaintiffs.

XX.

As a result of the above-mentioned false imprisonment, the Plaintiffs have suffered inconvenience, extreme mental distress, and have been damaged as set forth in paragraph XXVII below.

COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

XXI.

Plaintiffs reallege paragraphs I through X above as though set forth fully herein.

XXII.

The actions of the Defendants were extreme, outrageous, unreasonable, and the Defendants acted with the intent to cause or with the reckless disregard of probability of causing severe emotional distress.

XXIII.

As a direct and proximate cause of the Defendants' actions, the Plaintiffs, Shirley Salway, Theresa Imitates Dog, Guardian Ad Litem on behalf of her minor daughter, Celeste Imitates Dog, Tanya Hernandez, and Viola Hernandez, suffered severe and serious emotional distress, and have been damaged as set forth in paragraph XXVII below.

COUNT V - VICARIOUS LIABILITY

XXIV.

Plaintiffs reallege paragraphs I through X above as though set forth fully herein.

XXV.

The Defendant, by and through its Department of Interior, Bureau of Indian Affairs, the Oglala Sioux Tribe, and its Public Safety Commission, are vicariously liable for the actions of their employees, Glen Gibbons, Norman Rogers and Charles Cummings, when said Defendants injured the Plaintiffs.

XXVI.

As a result of said vicarious liability, the Defendant, United States of America, as set forth above, is vicariously liable for any and all damages incurred on behalf of their employees. The amounts of said damages to Plaintiffs are set forth in paragraph XXVII below.

COUNT VII - DAMAGES

XXVII.

As a direct and proximate cause of the actions of the Oglala Sioux Tribe, its Public Safety Commission, and its Public Safety Commission employees, including, but not limited to, Glen Gibbons, Norman Rogers, and Charles Cummings, Shirley Salway suffered damages in the amount of $1,000,000.00 for the following:

A. Pain and suffering, both mental and physical in the past and future;

B. Embarrassment and humiliation resulting from the sexual assault;

C. Emotional distress resulting from the sexual fondling by Officer Glen Gibbons;

D. Out of pocket expenses.

As a direct and proximate cause of the negligence of the Oglala Sioux Tribe, its Public Safety Commission, and its Public Safety Commission employees, including, but not limited to, Glen Gibbons, Norman Rogers, and Charles Cummings, Theresa Imitates

Dog, Guardian Ad Litem on behalf of her minor daughter, Celeste Imitates Dog, suffered damages in the amount of $750,000.00 for the following:

A. Pain and suffering, both mental and physical, in the past and future;

B. Emotional distress as a result of being maced by Tribal Police Officer Norman Rogers;

C. Embarrassment and humiliation at being illegally arrested and detained by the three officers mentioned;

D. Out of pocket expenses.

As a direct and proximate cause of the actions of the Oglala Sioux Tribe, its Public Safety Commission, and its Public Safety Commission employees, including, but not limited to, Glen Gibbons, Norman Rogers, and Charles Cummings, Viola Hernandez suffered damages in the amount of $500,000.00 for the following:

A. Pain and suffering, both mental and physical, in the past and future;

B. Emotional distress occasioned by the illegal arrest and detainment;

C. Embarrassment and humiliation at being illegally arrested and detained by the three officers mentioned;

D. Out of pocket expenses.

As a direct and proximate cause of the actions of the Oglala Sioux Tribe, its Public Safety Commission, and its Public Safety Commission employees, including, but not limited to, Glen Gibbons, Norman Rogers, and Charles Cummings, Tanya Hernandez suffered damages in the amount of $500,000.00 for the following:

A. Pain and suffering, both mental and physical, in the past and future;

B. Emotional distress occasioned by the illegal arrest and detainment;

C. Embarrassment and humiliation at being illegally arrested and detained by the three officers mentioned;

D. Out of pocket expenses.

WHEREFORE, the Plaintiffs request judgment against all Defendants, as follows:

I.

A. Shirley Salway in the amount of One Million Dollars ($1,000,000.00);

B. Theresa Imitates Dog, Guardian Ad Litem on behalf of her minor daughter, Celeste Imitates Dog, in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00);

C. Viola Hernandez in the amount of Five Hundred Thousand Dollars ($500,000.00);

D. Tanya Hernandez in the amount of Five Hundred Thousand Dollars ($500,000.00).

II.

Costs and disbursements herein.

III.

Reasonable attorney's fees.

IV.

For such other and further relief as the Court may deem just and equitable in the premises.

Dated this 28th day of May, 1996.

MORMAN LAW FIRM

BY [signature]

John T. Hughes
Attorney for the Plaintiffs
850 Main Street - P.O. Box 729
Sturgis, South Dakota 57785
(605) 347-3624

FILED
SEP 29 1997
CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

TERESA IMITATES DOG, Guardian Ad Litem on Behalf of Her Minor Daughter, CELESTE IMITATES DOG, TANYA HERNANDEZ, VIOLA HERNANDEZ, and SHIRLEY SALWAY,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CIV. 96-5044

SETTLEMENT AGREEMENT REGARDING VIOLA HERNANDEZ

It is hereby stipulated by and between Viola Hernandez, Plaintiff, and the United States of America, Defendant, by and through their respective attorneys as follows:

1. The parties do hereby agree to settle and compromise the above-entitled action under the terms and conditions set forth herein.

2. The United States of America, defendant, agrees to pay to the plaintiff the total sum of $3,000.00 (three thousand dollars), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries

UNITED STATES OF AMERICA } ss
DISTRICT OF SOUTH DAKOTA }
I, JOSEPH HAAS, Clerk of the United States District Court for the District of South Dakota, hereby certify that the above and foregoing is a true copy of the original now on file in my office.
Dated: 6/20/08
JOSEPH HAAS, Clerk
By Sandie Vhiele
Deputy

of Viola Hernandez, and the consequences thereof. This agreement binds Viola and all of her heirs, executors, administrators, or assigns, in settlement of all claims each has or may hereafter acquire against the United States of America, its agents, servants and employees for any incident resulting from the same subject matter that gave rise to the above-captained lawsuit brought against the United States of America for the alleged false arrest, false imprisonment, and personal injury of Viola Hernandez.

3. Plaintiff hereby agrees to accept the sum of $3,000.00 in full settlement and satisfaction of any and all claims, demands, rights and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries of Viola Hernandez, which she may have or hereafter acquire against the United States of America, its agents, servants and employees on account of her arrest and imprisonment at the Kyle jail on February 19-22, 1995. Plaintiff agrees to reimburse, indemnify and hold harmless the United States of America, its agents, servants and employees from any and all such causes of action, claims, liens, rights or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of claims by either Viola or her heirs, executors, administrators or assigns against any third party or against the United States resulting from the same incident which gave rise to this lawsuit.

4. This stipulation for compromise settlement shall not constitute an admission of liability or fault on the part of the United States, its agents, servants or employees, and is entered into by both parties for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation.

5. It is also agreed, by and among the parties, that the settlement amount of $3,000.00 represents the entire amount of the compromise settlement. It is also agreed that the respective parties will each bear their own costs, fees and expenses and that any attorneys fees owed by the plaintiff will be paid out of the settlement amount and not in addition thereto.

6. It is also understood by and among the parties that pursuant to Title 28 of the United States Code, Section 2678, attorneys fees for services rendered in connection with this action shall not exceed 25 per cent of the amount of the compromise settlement.

7. Payment of the settlement amount will be made by a check drawn on the Treasury of the United States for $3,000.00, and made payable to Viola Hernandez and John T. Hughes. The check will be mailed to the U.S. Attorney's Office in Rapid City at the following address: P.O. Box 2893, Rapid City, SD 57709. Upon its receipt, the Assistant U.S. Attorney will insure that all the necessary releases are signed, and once that condition is met, the United States Attorney will forward the check to plaintiff's attorney,

John T. Hughes. Plaintiff's attorney agrees to distribute the settlement proceeds to the plaintiff. Plaintiff's attorney is solely responsible to the plaintiff for insuring that the settlement money is properly distributed. No further claims against the United States will be brought by plaintiff or her heirs or assigns as the result of improper distribution of settlement proceeds once the check has been provided to plaintiff's attorney.

8. In consideration of the payment of $3,000.00 as set forth above, plaintiff agrees that she will cause her attorney to execute and file with the court such documents as shall be necessary to cause the above-captioned lawsuit to be dismissed with prejudice from the docket of the United States District Court.

Dated this 23rd day of September, 1997.

KAREN E. SCHREIER
United States Attorney
By:

DIANA RYAN
Assistant U.S. Attorney

Dated this 17 day of September, 1997.

JOHN T. HUGHES
Attorney for Plaintiff

VIOLA HERNANDEZ

FILED
SEP 29 1997
CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

TERESA IMITATES DOG, Guardian Ad Litem on Behalf of Her Minor Daughter, CELESTE IMITATES DOG, TANYA HERNANDEZ, VIOLA HERNANDEZ, and SHIRLEY SALWAY,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CIV. 96-5044

SETTLEMENT AGREEMENT REGARDING TERESA and CELESTE IMITATES DOG

It is hereby stipulated by and between Teresa Imitates Dog, Guardian Ad Litem on behalf of her minor daughter, Celeste Imitates Dog, Plaintiff, and the United States of America, Defendant, by and through their respective attorneys as follows:

1. The parties do hereby agree to settle and compromise the above-entitled action under the terms and conditions set forth herein.

2. The United States of America, defendant, agrees to pay to the plaintiff the total sum of $2,275.00 (two thousand two hundred and seventy-five dollars), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from and by reason

UNITED STATES OF AMERICA } SS
DISTRICT OF SOUTH DAKOTA
I, JOSEPH HAAS, Clerk of the United States District Court for the District of South Dakota, hereby certify that the above and foregoing is a true copy of the original now on file in my office.
Dated: 6/20/08
JOSEPH HAAS, Clerk
By Sandra Thiele
Deputy

43

complaint in the action brought in the United States District Court, District of South Dakota, Western Division, Civil No. 96-5044.

To procure this payment, Teresa Imitates Dog declares that she is of legal age, authorized and fully competent to execute this release; that no representation about the nature and extent of claimed injuries, disabilities or damages made by any physician, attorney or agent of the government, nor any representation regarding the nature and extent of legal liability or financial responsibility of the United States induced them to make this settlement and sign this release.

It is specifically acknowledged and agreed by the parties hereto that this agreement does and shall be construed to release and extinguish any claims against the United States, in full, as aforesaid, and that any sum for damages recovered by way of jury verdict, judgment, settlement, or otherwise, against any third parties that may be claimed to be joint tortfeasors, shall be reduced in the sum of the present value of the settlement as set forth in the aforementioned settlement agreement, or in such sum as shall be the pro rata share of the United States' obligation or liability for damages to Celeste Imitates Dog, however the same shall be determined, whichever sum shall be larger.

It is the intent and purpose of this agreement, and it is agreed that the same shall be construed to the end that not only are the claimed obligations and liabilities of the United States to

Celeste Imitates Dog or any heirs thereof, fully released and extinguished, but also that there shall exist no right of contribution on the part of any third parties or other claimed joint tortfeasors against the United States. This agreement shall be construed to this end in accordance with South Dakota Codified Laws, Sections 15-8-11 through 15-8-22.

It is further understood and agreed that this settlement is the compromise of a disputed claim and that the payment is not to be construed as an admission of liability on the part of the United States by whom liability is denied.

It is agreed that plaintiff, and her heirs, executors, administrators and assigns shall hold the United States harmless and indemnify them from any claims of other persons whomsoever, whether for contribution or full indemnity, including reasonable attorney's fees, in defending such claims which arise out of allegations contained in Civil Action No. 96-5044 filed in the United States District Court, District of South Dakota, Western Division.

Teresa Imitates Dog warrants that she is the legal guardian for Celeste Imitates Dog and that she has carefully read this release, knows and understands all of the contents thereof, and signs her name hereto as her own free act.

Dated this 26th day of September, 1997.

**CAUTION: THIS IS A RELEASE.**
**READ IT BEFORE SIGNING.**

Teresa Imitates Dog
Guardian Ad Litem for
Celeste Imitates Dog

witness: John T. Hughes
Plaintiff's attorney

Celeste Imitates Dog

witness: John T. Hughes
Plaintiff's attorney

FILED
SEP 29 1997
CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

TERESA IMITATES DOG, Guardian Ad Litem on Behalf of Her Minor Daughter, CELESTE IMITATES DOG, TANYA HERNANDEZ, VIOLA HERNANDEZ, and SHIRLEY SALWAY,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CIV. 96-5044

SETTLEMENT AGREEMENT REGARDING SHIRLEY SALWAY

It is hereby stipulated by and between Shirley Salway, Plaintiff, and the United States of America, Defendant, by and through their respective attorneys as follows:

1. The parties do hereby agree to settle and compromise the above-entitled action under the terms and conditions set forth herein.

2. The United States of America, defendant, agrees to pay to the plaintiff the total sum of $5,805.00 (five thousand dollars eight hundred and five dollars), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from and by reason of any and all known and unknown, foreseen and

UNITED STATES OF AMERICA } ss
DISTRICT OF SOUTH DAKOTA
I, JOSEPH HAAS, Clerk of the United States District Court for the District of South Dakota, hereby certify that the above and foregoing is a true copy of the original now on file in my office.
Dated: 6/20/08
JOSEPH HAAS, Clerk
By Sandra Thiele
Deputy

4
5

unforeseen bodily and personal injuries of Shirley Salway, and the consequences thereof. This agreement binds Shirley and all of her heirs, executors, administrators, or assigns, in settlement of all claims each has or may hereafter acquire against the United States of America, its agents, servants and employees for any incident resulting from the same subject matter that gave rise to the above-captained lawsuit brought against the United States of America for the alleged false arrest, false imprisonment, and personal injury of Shirley Salway.

3. Plaintiff hereby agrees to accept the sum of $5,805.00 in full settlement and satisfaction of any and all claims, demands, rights and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries of Shirley Salway, which she may have or hereafter acquire against the United States of America, its agents, servants and employees on account of her arrest and imprisonment at the Kyle jail on February 19-22, 1995. Plaintiff agrees to reimburse, indemnify and hold harmless the United States of America, its agents, servants and employees from any and all such causes of action, claims, liens, rights or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of claims by either Shirley or her heirs, executors, administrators or assigns against any third party or against the United States resulting from the same

incident which gave rise to this lawsuit.

4. This stipulation for compromise settlement shall not constitute an admission of liability or fault on the part of the United States, its agents, servants or employees, and is entered into by both parties for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation.

5. It is also agreed, by and among the parties, that the settlement amount of $5,805.00 represents the entire amount of the compromise settlement. It is also agreed that the respective parties will each bear their own costs, fees and expenses and that any attorneys fees owed by the plaintiff will be paid out of the settlement amount and not in addition thereto.

6. It is also understood by and among the parties that pursuant to Title 28 of the United States Code, Section 2678, attorneys fees for services rendered in connection with this action shall not exceed 25 per cent of the amount of the compromise settlement.

7. Payment of the settlement amount will be made by a check drawn on the Treasury of the United States for $5,805.00, and made payable to Shirley Salway and John T. Hughes. The check will be mailed to the U.S. Attorney's Office in Rapid City at the following address: P.O. Box 2893, Rapid City, SD 57709. Upon its receipt, the Assistant U.S. Attorney will insure that all the necessary releases are signed, and once that condition is met, the United

States Attorney will forward the check to plaintiff's attorney, John T. Hughes. Plaintiff's attorney agrees to distribute the settlement proceeds to the plaintiff. Plaintiff's attorney is solely responsible to the plaintiff for insuring that the settlement money is properly distributed. No further claims against the United States will be brought by plaintiff or her heirs or assigns as the result of improper distribution of settlement proceeds once the check has been provided to plaintiff's attorney.

8. In consideration of the payment of $5,805.00 as set forth above, plaintiff agrees that she will cause her attorney to execute and file with the court such documents as shall be necessary to cause the above-captioned lawsuit to be dismissed with prejudice from the docket of the United States District Court.

Dated this 23rd day of September, 1997.

KAREN E. SCHREIER
United States Attorney
By:

DIANA RYAN
Assistant U.S. Attorney

Dated this 17 day of September, 1997.

JOHN T. HUGHES
Attorney for Plaintiff

SHIRLEY SALWAY

FILED
SEP 29 1997
CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

TERESA IMITATES DOG, Guardian Ad Litem on Behalf of Her Minor Daughter, CELESTE IMITATES DOG, TANYA HERNANDEZ, VIOLA HERNANDEZ, and SHIRLEY SALWAY,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CIV. 96-5044

SETTLEMENT AGREEMENT REGARDING TANYA HERNANDEZ

It is hereby stipulated by and between Tanya Hernandez, Plaintiff, and the United States of America, Defendant, by and through their respective attorneys as follows:

1. The parties do hereby agree to settle and compromise the above-entitled action under the terms and conditions set forth herein.

2. The United States of America, defendant, agrees to pay to the plaintiff the total sum of $4,687.50 (four thousand six hundred and eighty-seven dollars and fifty cents), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from and by reason of any and all known and unknown, foreseen and

UNITED STATES OF AMERICA } ss
DISTRICT OF SOUTH DAKOTA }
I, JOSEPH HAAS, Clerk of the United States District Court for the District of South Dakota, hereby certify that the above and foregoing is a true copy of the original now on file in my office.
Dated: 6/20/08
JOSEPH HAAS, Clerk
By Sandra Thiele
Deputy

unforeseen bodily and personal injuries of Tanya Hernandez, and the consequences thereof. This agreement binds Tanya Hernandez and all of her heirs, executors, administrators, or assigns, in settlement of all claims each has or may hereafter acquire against the United States of America, its agents, servants and employees for any incident resulting from the same subject matter that gave rise to the above-captained lawsuit brought against the United States of America for the alleged false arrest, false imprisonment, and personal injury of Tanya Hernandez.

3. Plaintiff hereby agrees to accept the sum of $4,687.50 in full settlement and satisfaction of any and all claims, demands, rights and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries of Tanya Hernandez, which she may have or hereafter acquire against the United States of America, its agents, servants and employees on account of her arrest and imprisonment at the Kyle jail on February 19-21, 1995. Plaintiff agrees to reimburse, indemnify and hold harmless the United States of America, its agents, servants and employees from any and all such causes of action, claims, liens, rights or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of claims by either Tanya or her heirs, executors, administrators or assigns against any third party or against the United States resulting from the same incident

which gave rise to this lawsuit.

4. This stipulation for compromise settlement shall not constitute an admission of liability or fault on the part of the United States, its agents, servants or employees, and is entered into by both parties for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation.

5. It is also agreed, by and among the parties, that the settlement amount of $4,687.50 represents the entire amount of the compromise settlement. It is also agreed that the respective parties will each bear their own costs, fees and expenses and that any attorneys fees owed by the plaintiff will be paid out of the settlement amount and not in addition thereto.

6. It is also understood by and among the parties that pursuant to Title 28 of the United States Code, Section 2678, attorneys fees for services rendered in connection with this action shall not exceed 25 per cent of the amount of the compromise settlement.

7. Payment of the settlement amount will be made by a check drawn on the Treasury of the United States for $4,687.50, and made payable to Tanya Hernandez and John T. Hughes. The check will be mailed to the U.S. Attorney's Office in Rapid City at the following address: P.O. Box 2893, Rapid City, SD 57709. Upon its receipt, the Assistant U.S. Attorney will insure that all the necessary releases are signed, and once that condition is met, the United

States Attorney will forward the check to plaintiff's attorney, John T. Hughes. Plaintiff's attorney agrees to distribute the settlement proceeds to the plaintiff. Plaintiff's attorney is solely responsible to the plaintiff for insuring that the settlement money is properly distributed. No further claims against the United States will be brought by plaintiff or her heirs or assigns as the result of improper distribution of settlement proceeds once the check has been provided to plaintiff's attorney.

8. In consideration of the payment of $4,687.50 as set forth above, plaintiff agrees that she will cause her attorney to execute and file with the court such documents as shall be necessary to cause the above-captioned lawsuit to be dismissed with prejudice from the docket of the United States District Court.

Dated this 23rd day of September, 1997.

KAREN E. SCHREIER
United States Attorney
By:

DIANA RYAN
Assistant U.S. Attorney

Dated this 17 day of September, 1997.

JOHN T. HUGHES
Attorney for Plaintiff

TANYA HERNANDEZ

# RYAN DECLARATION
# EXHIBIT 2

FILED
08 1997
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GERALDINE WHITE BUTTERFLY, Guardian Ad Litem of JANELLE WHITE BUTTERFLY,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civ. No. 97-5075<br><br>COMPLAINT |

Comes now Geraldine White Butterfly, through her attorney, Terry L. Pechota, and for her complaint states and alleges as follows:

1. This action arises and this Court has jurisdiction under the Federal Tort Claims Act of 1948, 62 Stat. 982, 28 USC 1346 (b), 2671 et seq. , and Pub. L. 101-512 (1990).

2. Plaintiff Geraldine White Butterfly and Janelle White Butterfly reside at Pine Ridge, South Dakota, within the jurisdiction of this Court.

3. At all relevant times herein mentioned, defendant, by and through its Department of Interior, Bureau of Indian Affairs, contracted with the Oglala Sioux Tribe and its Public Safety Commission pursuant to 25 USC 450 et seq., Indian Self Determination Act, to provide law enforcement services on the Pine Ridge



1

Indian Reservation.

4. At all relevant times, the Oglala Sioux Tribe and its Public Safety Commission operated a police department on the Pine Ridge Indian Reservation and employed numerous employees. In doing and in omitting to do all things alleged herein, the Oglala Sioux Tribe, its Public Safety Commission, and all of its employees were performing functions under the contract entered into pursuant to 25 USC 450, et seq.

5. At all relevant times, Tancrede J. Hamel was an employee of the Oglala Sioux Tribe and its Public Safety Commission as a law enforcement officer.

6. Under the provisions of Pub. L. 101-512, the Oglala Sioux Tribe, its Public Safety Commission, and Public Safety Commission employees are deemed, for the purposes of the Federal Tort Claims Act, to be part of the Bureau of Indian Affairs in the United States Department of Interior while either carrying out any such contract or, in the case of employees, while acting within the scope of their employment.

7. On or about December 16, 1995, Tancrede J. Hamel, a law enforcement officer and employee of the Oglala Sioux Tribe and its Public Safety Commission, while acting in the course and scope of his employment as a law enforcement officer and employee, took Janelle White Butterfly, a fourteen (14) year old child at the time, into his presence, possession, and custody

near Pine Ridge, South Dakota, and had acts of sexual intercourse with her.

8. Tancrede J. Hamel, while employed by the Oglala Sioux Tribe and its Public Safety Commission on or about December 16, 1995, as previously alleged, was negligent, including but not limited to the following:

a. Assaulting Janelle White Butterfly;

b. Committing a battery upon Janelle White Butterfly;

c. Falsely imprisoning Janelle White Butterfly;

d. Abuse of process in his dealings with Janelle White Butterfly;

e. Engaging in acts of unlawful sexual intercourse with Janelle White Butterfly;

f. Violating rules, regulations, and procedures dealing with the arrest, custody, and disposition of juveniles;

g. Negligently inflicting emotional distress upon Janelle White Butterfly;

h. Negligently disregarding the rights of Janelle White Butterfly under 25 USC 1302, 18 USC 2423, and other federal and tribal statutes designed for the protection of her rights;

i. Failing to protect Janelle White Butterfly from harm.

9. The Oglala Sioux Tribe and its Public Safety Commission, deemed by law to be part of the Bureau of Indian Affairs, in the

United States Department of Interior, acting by and through its servants and employees, all acting within the scope of their agency and employment, were negligent with respect to employment of Tancrede J. Hamel, including but not limited to the following:

a. Failing to monitor, supervise, control, and discipline its officers;

b. Failing to undertake prior to employment adequate back-ground investigation of persons selected as police officers;

c. Failing to employ qualified officers;

d. Failing to properly train its officers;

e. Failing to properly select its officers;

f. Hiring persons with dangerous propensities;

g. Permitting, encouraging, tolerating, and ratifying unjustified, unreasonable, and illegal treatment of civilians and juveniles by police officers.

10. As a proximate cause and cause in fact of the negligence of the Oglala Sioux Tribe, its Public Safety Commission, and Public Safety Commission employees, including but not limited go Tancrede J. Hamel, Janelle White Butterfly suffered damages in the amount of $1,250,000 for the following:

a. Pain and suffering, both mental and physical, in the past and for the future;

b. Embarrassment and humiliation, including disgrace and disrepute;

c. Loss of wages and diminished earning capacity;

d. Medical and counseling expenses, both in the past and for the future;

e. Loss of enjoyment of life; and

f. Diminishment in quality of life;

11. If defendants were private persons, they would be liable to plaintiff in accordance with the law of South Dakota or the Oglala Sioux Tribe.

12. On or about May 2, 1996, plaintiff filed a claim for administrative settlement with the Bureau of Indian Affairs and Oglala Sioux Tribe Public Safety Commission as required by 28 USC 2675 in the amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000). The Bureau of Indian Affairs denied the claim on or about March 11, 1997, and this action is brought within six months of denial as authorized by law.

WHEREFORE, plaintiff demands judgment against defendant in the amount set forth in the administrative claim or such other amount as this Court deems proper under the circumstances, plus their costs and disbursements, including attorney's fees, and for such other or additional relief as the Court may deem just in the premises.

Dated this 8th day of September, 1997.

Terry L. Pechota
VIKEN, VIKEN, PECHOTA, LEACH & DEWELL, LLP
Attorneys at Law
1617 Sheridan Lake Road
Rapid City, SD 57702
(605) 341-4400

FILED

JUL 17 1998

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

CIV. No. 97-5075

GERALDINE WHITE BUTTERFLY, Guardian Ad Litem of JANELLE WHITE BUTTERFLY,

Plaintiff,

vs.

UNITED STATES OF AMERICA,

Defendant.

MOTION FOR APPROVAL OF SETTLEMENT

COMES NOW the Plaintiff, by and through her undersigned attorney, and respectfully moves this court, pursuant to its Order Appointing Guardian Ad Litem of September 9, 1998, for its order approving the settlement agreed to between the parties as set forth in their Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claim Pursuant to 28 U.S.C. § 2677, a copy of which settlement agreement is attached to and by this reference made a part of this motion.

Dated this 16 of July, 1998.

Scott D. McGregor
VIKEN VIKEN PECHOTA LEACH & DEWELL, LLP
Attorney for the Plaintiff
1617 Sheridan Lake Road
Rapid City, SD 57702-3483
(605) 341-4400

UNITED STATES OF AMERICA }
DISTRICT OF SOUTH DAKOTA } SS
I, JOSEPH HAAS, Clerk of the United States District Court for the District of South Dakota, hereby certify that the above and foregoing is a true copy of the original now on file in my office.
Dated: 6-24-08
JOSEPH HAAS, Clerk
By Bonnie Horan
Deputy

1 0

CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a true and correct copy of the above and foregoing MOTION FOR APPROVAL OF SETTLEMENT upon the person(s) next designated below by depositing the same in the United States mail, first class postage prepaid, at Rapid City, South Dakota 57701, in an envelope addressed to that person(s) at her last known address, namely:

Ms. Diana Ryan
Assistant United States Attorney
P.O. Box 2893
Rapid City, SD 57709-2893

Dated this 16 day of July, 1998.

Scott D. McGregor

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| GERALDINE WHITE BUTTERFLY, Guardian ad Litem for Janelle White Butterfly, | ) |
| Plaintiff, | ) Civil Action No. 97-5075 |
| vs. | ) |
| UNITED STATES OF AMERICA | ) |
| Defendant. | ) |

STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

The parties to this Stipulation For Compromise Settlement And Release stipulate and agree that the above-captioned action and the Federal Tort Claims Act claims of the undersigned claimant Geraldine White Butterfly, as Guardian Ad Litem for Janelle White Butterfly and Janelle's beneficiaries be settled and compromised based on the terms and conditions set forth below:

1. This Stipulation For Compromise Settlement And Release shall not constitute an admission of liability or fault on the part of the United States, its agents, servants, or employees, and is entered into by the parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

2. The United States agrees to pay to Geraldine White Butterfly, Guardian Ad Litem for Janelle White Butterfly, the undersigned claimant, the cash sums set forth below in paragraph

2.a., and to purchase the annuity contract described below in paragraph 2.b.

a. As soon as it is practicable after the execution of this Stipulation For Compromise Settlement And Release, the United States will wire transfer to Ringler Associates Settlement Trust Account (at Sandy Spring National Bank of Maryland, 17801 Georgia Avenue, Olney, Maryland 20832, ABA# 055001096, Account # 5201494901), the sum of Ninety Thousand Dollars ($90,000.00)(hereinafter "settlement amount"), out of which the following disbursements will be made by Ringler Associates, Inc., Washington, D.C. from said trust account:

(1) To the claimant, and her attorney, Scott D. McGregor, the sum remaining from the settlement amount after purchase of the annuity described below in paragraph 2.b.;

(2) To a life insurance company rated at least A+ as rated by A.M. Best rating service, a sum sufficient to purchase an annuity contract to make the payments described in paragraph 2.b.

The parties agree that any attorney's fees owed by the claimant(s) shall not exceed 25% of the settlement amount (28 U.S.C. § 2678) and must be paid out of the settlement amount and not in addition thereto.

b. The United States will purchase an annuity contract(s) to make the following payments:

<u>Payable to Janelle White Butterfly:</u>

$ 630 a month for 10 years certain only. Payments begin 1 year after annuity purchase.

In the event of the death of Janelle White Butterfly prior to the end of the certain period, any remaining certain payments shall

be paid to the estate of Janelle White Butterfly or to the beneficiary that Janelle White Butterfly may designate in writing to the annuity issuer after reaching the age of majority. Any such designation, or revocation thereof, shall be in writing and in a form acceptable to the annuity issuer.

The annuity contract will be owned solely and exclusively by the United States and will be purchased as soon as practicable following the execution of this Stipulation For Compromise Settlement And Release, the receipt of court approval of the settlement on behalf of Janelle White Butterfly by her Guardian, Geraldine White Butterfly, and the Dismissal With Prejudice of the action pending in the Oglala Sioux Tribal Court. The parties stipulate and agree that the United States' only obligation with respect to said annuity contract and any annuity payments therefrom is to purchase the annuity contract, and they further agree that the United States does not guarantee or insure any of the annuity payments. The parties further stipulate and agree that the United States is released from any and all obligations with respect to the annuity contract and annuity payments upon the purchase of the annuity contract.

The parties stipulate and agree that the annuity company that issued the annuity contract or its assignee shall at all times have the sole obligation for making all annuity payments. The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check in the amount of such payment to the address designated by the party to whom the payment

is required to be made under this Stipulation For Compromise Settlement And Release. Checks lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company, but the annuity company is not liable for interest during the interim.

The parties stipulate and agree that the annuity payments cannot be accelerated, deferred, increased, or decreased by the parties, that no part of any annuity payments called for herein or any assets of the United States or the annuity company are subject to execution or any legal process for any obligation in any manner, and that the claimant shall not have the power to sell, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise. Upon reaching her age of majority, Janelle White Butterfly may not sell, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise and is fully bound by the terms of this agreement.

The claimant and Janelle's guardians, heirs, executors, administrators or assigns do hereby agree to maintain with the annuity company and the United States a current mailing address, and to notify the annuity company and the United States of the death of any beneficiary of said annuity contract within ten (10) days of death.

3. Geraldine White Butterfly, Guardian Ad Litem for Janelle White Butterfly and Janelle's heirs, executors, administrators or assigns do hereby accept the cash sums set forth above in paragraph 2.a. and the purchase of the annuity contract set forth above in

paragraph 2.b. in full release, settlement, and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, in federal, state and tribal court, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, death, or damage to property, and the consequences thereof, which Janelle White Butterfly or her heirs, executors, administrators, or assigns may have or hereafter acquire against the United States, its agents, servants and employees on account of the same subject matter that gave rise to the above-captioned action, including any future claims for wrongful death and any claims for fees, costs and expenses; and do hereby agree to reimburse, indemnify and hold harmless the United States and its agents, servants, and employees from any and all such claims, causes of action, liens, rights, or subrogated or contribution interests incident to, resulting or arising from the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

4. This compromise settlement is specifically subject to each of the following conditions:

(a) An agreement by the parties on the terms, conditions, and requirements of this Stipulation For Compromise Settlement And Release and the annuity contract. The parties stipulate and agree that the Stipulation For Compromise Settlement And Release and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions and requirements of this Stipulation For Compromise Settlement And Release, or the annuity

contract. The terms, conditions and requirements of this Stipulation For Compromise Settlement And Release are not severable and the failure to agree, fulfill or comply with any term, condition, or requirement renders the entire Stipulation For Compromise Settlement And Release and the compromise settlement null and void. The authorization by the Attorney General or the Attorney General's designee to negotiate and consummate a settlement for the amount agreed upon by the parties does not make the settlement binding upon the United States unless and until the other terms, conditions and requirements of this Stipulation For Compromise Settlement And Release have been completely agreed upon in writing.

(b) Janelle White Butterfly, as beneficiary of the annuity contract set forth above in paragraph 2.b., must be alive at the time of the purchase of said annuity contract. In the event of Janelle White Butterfly's death prior to both the purchase of said annuity contract, the entire Stipulation For Compromise Settlement And Release and the compromise settlement are null and void.

(c) Prior approval of the settlement by a court of competent jurisdiction, if required by law. In the event a claimant or state law requires court approval of this settlement, the claimant has the obligation to obtain such approval. Such court approval must be obtained prior to both the purchase of the annuity contract. The claimant agrees to obtain such approval in a timely manner: time being of the essence. The claimant further agrees that the United States may void this settlement at its option in the event the claimant fails to obtain such approval in a timely manner. In the

event the claimant or state law requires court approval of this settlement and such approval is not obtained, the entire Stipulation For Compromise Settlement And Release and the compromise settlement are null and void.

(d) Claimant agrees to obtain a dismissal, with prejudice, of the pending action in tribal court, Geraldine White Butterfly, Guardian Ad Litem of Janelle White Butterfly vs. Oglala Sioux Tribe, Oglala Sioux Tribe Public Safety Commission and Tancrede J. Hamel, Civ. 97-1132, arising out of the same incidence as this federal litigation prior to the purchase of the annuity contract and the disbursement of funds.

5. Claimants' attorney agrees to distribute the settlement proceeds among the claimants, and to obtain a dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

Executed this 16th day of July, 1998.

Geraldine White Butterfly,
Guardian Ad Litem for
Janelle White Butterfly,
Claimant

Diana Ryan
Attorney for Defendant
United States of America

Scott D. McGregor
Attorney for Claimant

LAWRENCE H. CURTIS
MELINDA A. LONG
Ringler Associates, Inc.
Structured Settlement Consultants

FILED
JUL 17 1998
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

CIV. No. 97-5075

| | | |
|---|---|---|
| GERALDINE WHITE BUTTERFLY, Guardian Ad Litem of JANELLE WHITE BUTTERFLY,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | MOTION FOR APPROVAL OF SETTLEMENT |

COMES NOW the Plaintiff, by and through her undersigned attorney, and respectfully moves this court, pursuant to its Order Appointing Guardian Ad Litem of September 9, 1998, for its order approving the settlement agreed to between the parties as set forth in their Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claim Pursuant to 28 U.S.C. § 2677, a copy of which settlement agreement is attached to and by this reference made a part of this motion.

Dated this 16 of July, 1998.

Scott D. McGregor
VIKEN VIKEN PECHOTA LEACH & DEWELL, LLP
Attorney for the Plaintiff
1617 Sheridan Lake Road
Rapid City, SD 57702-3483
(605) 341-4400

CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a true and correct copy of the above and foregoing MOTION FOR APPROVAL OF SETTLEMENT upon the person(s) next designated below by depositing the same in the United States mail, first class postage prepaid, at Rapid City, South Dakota 57701, in an envelope addressed to that person(s) at her last known address, namely:

Ms. Diana Ryan
Assistant United States Attorney
P.O. Box 2893
Rapid City, SD 57709-2893

Dated this 16 day of July, 1998.

Scott D. McGregor

FILED
AUG 04 1998
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| GERALDINE WHITE BUTTERFLY, Guardian Ad Litem of JANELLE WHITE BUTTERFLY, Plaintiff, | ) | CIV. 97-5075 |
| vs. | ) | ORDER |
| UNITED STATES OF AMERICA, Defendant. | ) | |

Pursuant to the parties Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Claim, it is hereby

ORDERED that the proposed settlement is approved and the case is dismissed with prejudice.

Dated this 4th day of August, 1998.

BY THE COURT:

[signature]

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE

FILED
APR 29 1999
CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| GERALDINE WHITE BUTTERFLY, Guardian Ad Litem of JANELLE WHITE BUTTERFLY, Plaintiffs, | ) | CIV 97-5075 |
| vs. | ) | |
| UNITED STATES OF AMERICA, Defendant. | ) | |

KAREN E. SCHREIER
United States Attorney
By:

Diana Ryan
DIANA RYAN
Assistant U.S. Attorney
P.O. Box 2893
Rapid City, SD 57709
(605) 342-7822

UNITED STATES OF AMERICA } ss
DISTRICT OF SOUTH DAKOTA }
I, JOSEPH HAAS, Clerk of the United States District Court for the District of South Dakota, hereby certify that the above and foregoing is a true copy of the original now on file in my office.
Dated: 6/20/08
JOSEPH HAAS, Clerk
By Sandra Thiele
Deputy



13

KEYPORT

Keyport
Life Insurance Company

A Stock Company

READ YOUR POLICY CAREFULLY. This is a legal contract between you and the Company.

**RIGHT TO CANCEL. You may return this policy to us or to your agent within 10 days of its receipt. We will refund any premium paid and the policy will be treated as if it had never been issued.**

We will pay the benefits provided in this policy, subject to its terms and conditions. The POLICY GUIDE on the inside of the front cover shows where the major policy provisions can be found.

Signed for the Company on the *Date of Issue*. Our *Administrative Office* for this policy is P.O. Box 1525, Dover, N.H. 03821-1525.

James J. Klopper — Secretary

John W. Rosensteel — President

POLICY DESCRIPTION

This is a single premium immediate ANNUITY POLICY with one Annuitant. The Annuity Benefit is shown on page 3. This policy is not eligible for dividends.

| POLICY GUIDE | | Page |
|---|---|---|
| | ANNUITY BENEFIT | 4 |
| | ASSIGNMENT | 5 |
| | BENEFICIARY | 4 |
| | DEFINITIONS | 2 |
| | GENERAL CONTRACT PROVISIONS | 5 |
| | INCONTESTABILITY | 5 |
| | OWNER | 4 |
| | PAYMENT OF PROCEEDS | 5 |
| | POLICY INFORMATION | 3 |
| | PREMIUM | 4 |
| | ANY ADDITIONAL AGREEMENTS, A COPY OF THE APPLICATION AND ANY ENDORSEMENTS APPEAR BEFORE PAGE | 6 |


DEFINITIONS

This is what we mean when we use these italicized words in your policy:

*Date of Issue.* The date this policy is issued and your rights and benefits begin. It is shown on page 3.

*Administrative Office.* P.O. Box 1525, Dover, N.H. 03821-1525.

*Proceeds.* All or part of the amount payable under any provision of this policy.

*Written Request.* A notice in writing, satisfactory to us, placed on file at our *Administrative Office*.

We have not italicized the following words because they appear in so many places in your policy, but this is what they mean:

We, Our, Us. Keyport Life Insurance Company.

You, Your. The Owner of this policy, who may be someone other than the Annuitant.

POLICY INFORMATION

| | | | |
|---|---|---|---|
| ANNUITANT: | JANELLE RAE WHITE BUTTERFLY | | |
| POLICY NUMBER: | NP3-090033 | | |
| DATE OF ISSUE: | August 31, 1998 | | |
| ISSUE AGE: | 17 | SINGLE PREMIUM: | Valuable Consideration |
| SEX: | Female | | |

TYPE OF COVERAGE

POLICY: Single Premium Immediate Annuity

ADDITIONAL AGREEMENTS:

Amendatory Agreement

$630.00 will be paid on August 31, 1999 and continue monthly thereafter through July 31, 2009.

ALL PAYMENTS ARE GUARANTEED.

Payments will be made to the Annuitant if living, otherwise; to the Estate of Janelle Rae White Butterfly.

DUPLICATE

BENEFIT

AN JITY BENEFIT

This policy provides for the payment of the Annuity Benefit shown on page 3.

PREMIUM

SINGLE PREMIUM

The single premium is payable on or before delivery of this policy. The premium is payable at our *Administrative Office*, or to an authorized agent. We will give you a receipt upon request.

This policy will not take effect until the premium is paid.

OWNER AND BENEFICIARY

OWNER

The Owner is as named in the application on the *Date of Issue*, and may be changed from time to time. Unless otherwise provided, the ownership rights of an individual who dies before the Annuitant will belong to the executors or administrators of that individual's estate. The ownership rights of a corporation, partnership or fiduciary will belong to its successors or assigns.

During the Annuitant's lifetime, the rights and privileges stated in this policy may be exercised only by the Owner.

BENEFICIARY

The Beneficiary will have an interest in the *proceeds* after the death of the Annuitant only if page 3 provides for such an interest.

The Beneficiary is as named in the application on the *Date of Issue*, and may be changed from time to time. The interest of any Beneficiary who dies before the Annuitant will terminate at the death of the Beneficiary. The interest of any Beneficiary who dies after the Annuitant, but before receipt of any *proceeds*, will belong to the executors or administrators of that Beneficiary's estate.

If no Beneficiary designation is in effect at the Annuitant's death, or if there is no designated Beneficiary then living, you will be the Beneficiary. However, if the Annuitant was the Owner, the executors or administrators of the Annuitant's estate will be the Beneficiary.

Unless otherwise provided, payment will be made in equal shares to those beneficiaries entitled to receive the *proceeds*.

CHANGE OF OWNERSHIP OR BENEFICIARY

You may change the Owner or any Beneficiary by *written request* during the Annuitant's lifetime. The change will take effect as of the date the request is signed if we acknowledge receipt in writing, whether or not you or the Annuitant is living at the time of acknowledgment. The change will be subject to any assignment, and to any payment made or action taken by us before acknowledgment.

PAYMENT OF PROCEEDS

PROOF BEFORE PAYMENT
We have the right to require proof:

1. of the correct age of the Annuitant before making the first Annuity Benefit payment; and

2. that the Annuitant is living on the date each Annuity Benefit payment is payable.

Payment to the Beneficiary will be made only if we receive proof, satisfactory to us, of the Annuitant's death.

INCONTEST-ABILITY

INCONTESTABILITY
We will not contest this policy.

GENERAL CONTRACT PROVISIONS

YOUR POLICY
Your policy is issued in consideration of the application and the payment of the single premium. A copy of the application is attached. All statements made in the application are representations and not warranties. No statement made by or on behalf of the Annuitant will be used by us to defend a claim under this policy unless it is in the application.

Any additional agreements are shown on page 3. These agreements are attached to and made a part of this policy. This policy and the application contain the entire contract between you and us.

WAIVER
No waiver nor agreement to change any provision of this policy will be valid unless made in writing by our President, Vice President, Secretary or Assistant Secretary.

MISSTATEMENT OF AGE OR SEX
If the age or sex of the Annuitant has been misstated, any *proceeds* will be adjusted to that amount which the premium paid would have purchased at the correct age and sex. Age refers to the Annuitant's age nearest birthday on the *Date of Issue*.

ASSIGNMENT
Your policy may be assigned. We will not be on notice of any assignment until a duplicate of the original assignment is filed at our *Administrative Office*. We assume no responsibility for the validity or effect of any assignment, and may rely solely on the assignee's statement of interest.

The *proceeds* of this policy will be subject first to the interest of an assignee, to whom payment will be made only in one sum.

ANNIVERSARIES

Months, years and their anniversaries will be computed from the date the first Annuity Benefit payment is to be made.

NONPARTICIPATING

Your policy is not eligible for dividends.

KEYPOR. LIFE INSURANCE COMPANY
P.O. Box 1525
Dover, NH 03820-1525

APPLICATION
SINGLE PREMIUM
IMMEDIATE ANNUITY

NP3-090033

1. Annuitant's Name (first, middle initial, last) and Address:

Janelle Rae White Butterfly
P.O. Box 1718, 193 East Ridge
Pine Ridge, SD 57770

2. Date of Birth: 02/ 28/ 81 (M D Y) Age: ____

3. [ ] Male [X] Female

Social Security No: 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

4. Joint Annuitant's Name (first, middle initial, last) and Address:

5. Date of Birth: / / (M D Y) Age: ____

6. [ ] Male [ ] Female

Social Security No: ____

Relationship to Annuitant: ____

7. Owner's name and address (if no other Owner is designated, the Annuitant will be the Owner):

United States of America
U.S. Attorney's Office
515 Ninth Street - 226 Federal Bldg.
Rapid City, SD 57701

The Owner is [ ] Individual [ ] Corporation [ ] Partnership [ ] Trustee

8. Single Premium: $ Valuable Consideration

9. [ ] Yes [X] No Is this Annuity intended to replace or change, in whole or in part, any existing life insurance, including U.S. Government Life Insurance, or Annuity in this or another company: If "yes," give company, plan and amount:

10. Annuity Benefits:

Payable to Janelle White Butterfly:
$630 a month for 10 years certain only beginni
08/31/1999.

11. Name of Beneficiary and relationship to Annuitant:

See policy info page.

12. Home Office Use Only

13. I declare that all statements and answers given above are true and complete to the best of my knowledge and belief. I agree that they will form the basis for, and be a part of, any Annuity contract issued by the Company.

Any person who knowingly, and with intent to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information may be subject to criminal or civil penalties.

Diana Ryan
Signature of Applicant/Owner United States of America

Rapid City, SD — Dated at (City, State)
9-22-98 — On (Month, Day, Year)

Assistant U.S. Attorney
Title

Agent: I declare that, to the best of my knowledge and belief, the policy applied for [ ] does [ X ] does not involve the replacement of existing insurance or annuity as defined in the applicable regulation.

Lawrence H. Curtis (signature)
Signature of Agent Lawrence H. Curtis

Rockville, MD — Dated at (City, State)
09/14/1998 — On (Month, Day)

Ringler Associates, Inc.
Agency

Agent # ____ Agent License # ____

AP/SPIA(3)/(4)-1995

DUPLICATE

KEYPORT

**Keyport**
**Life Insurance Company**

Providence, Rhode Island

POLICY DESCRIPTION

This is a single premium immediate ANNUITY POLICY with one Annuitant. The Annuity Benefit is shown on page 3. This policy is not eligible for dividends.

# RYAN DECLARATION
# EXHIBIT 3

FILED
AUG 19 1998
CLERK

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| MELANIE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT FOR |
| | ) | ASSAULT AND BATTERY |
| UNITED STATES OF AMERICA, | ) | AND INDECENT LIBERTIES |
| acting through the DEPARTMENT | ) | |
| OF THE INTERIOR, BUREAU OF | ) | |
| INDIAN AFFAIRS and | ) | |
| RIO LUNDERMAN, | ) | |
| | ) | |
| Defendants. | ) | |

* * * * * * * * * * * * * * 

The Plaintiff, Melanie Williams, states and alleges as follows:

1. Plaintiff is a citizen of the State of South Dakota, and the Defendant, the United States Department of the Interior, is a department of the United States Government. The Defendant, Rio Lunderman, is a citizen of the State of South Dakota, and a resident of Fort Thompson, South Dakota. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

2. At the times hereinafter mentioned, the Defendant, Rio Lunderman, was regularly employed with the United States Department of Interior, Bureau of Indian Affairs, as a jailer in the Crow Creek Agency Jail in Fort Thompson, South Dakota.

3. At all times hereinafter mentioned, the Plaintiff, Melanie Williams, was a resident of Pierre, South Dakota.

4. That on or about April 10, 1997, the undersigned was incarcerated in the Crow Creek Agency jail in Fort Thompson, South Dakota, for a charge of disorderly conduct. That subsequent thereto, said charges were dismissed against your undersigned. Your undersigned was booked into the jail by Rio Lunderman. Your Plaintiff was then placed in a cell by herself with a double bunk bed.

5. At that date, while the Plaintiff was incarcerated in said jail, the Defendant, without any encouragement or inducement by the Plaintiff, violently and forcibly laid his hands on the Plaintiff's person and forcibly kissed and embraced her against her will.

6. Further, at said time and place, the Defendant, without any encouragement or inducement by the Plaintiff, committed assault and battery upon your Plaintiff by laying his hands on your Plaintiff's breasts and touching them against her will.

7. As a direct result of said assault and indecent liberties, the Plaintiff was greatly humiliated, shamed, embarrassed, endured great suffering of body and mind, and was and still is nervous and distraught.

WHEREFORE, this action is brought under 31 U.S.C. §231.

WHEREFORE, your Plaintiff prays for relief as follows:

(1) Award her her costs and attorney's fees as may be authorized by statute;

(2) Award her a sum of money reasonably necessary to compensate her for humiliation, harassment, pain and suffering suffered by the Plaintiff herein.

(3) Award her a sum of money reasonably calculated to compensate her for the battery inflicted upon her;

(4) Award her a sum of money reasonably calculated to punish the Defendants herein for the willful, contumacious and malicious acts of the Defendant, Rio Lunderman;

(5) For such other and further relief as to the Court may seem just and proper in the premises.

Dated this 12th day of August, 1998.

Melanie J. Williams
Melanie Williams, Plaintiff

STATE OF SOUTH DAKOTA )
: ss
COUNTY OF HUGHES )

Melanie Williams, being duly sworn, deposes and says that she has read the foregoing COMPLAINT FOR ASSAULT AND BATTERY AND INDECENT LIBERTIES and knows the contents thereof; that the same is true of her own knowledge except as to those matters therein stated on information and belief, and as to those matters she believes it to be true.

Melanie J. Williams
Melanie Williams

Subscribed and sworn to before me this 12th day of August, 1998.

Francine J. Segrud
Notary Public
My commission expires: 10-13-2003

FRANCINE J. SEGRUD
(SEAL)
NOTARY PUBLIC
SOUTH DAKOTA
SEAL SEAL

FILED
DEC 30 1999
CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| MELANIE WILLIAMS<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 98-3018 |

STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between the undersigned claimant, Melanie Williams, and the United States of America, by and through their respective attorneys, as follows:

1. The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Settlement Agreement.

2. The United States of America agrees to pay the sum of One Thousand and 00/100 Dollars ($1,000.00), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the subject matter of this settlement,

including any claims for wrongful death, for which claimants or their guardians, heirs, executors, administrators, or assigns, and each of them, now have or may hereafter acquire against the United States of America, its agents, servants, and employees.

3. Claimant and her guardians, heirs, executors, administrators or assigns hereby agree to accept the sums set forth in this Stipulation of Compromise Settlement in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including claims for wrongful death, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof which they may have or hereafter acquire against the United States of America, its agents, servants and employees on account of the same subject matter that gave rise to the above-captioned action, including any future claim or lawsuit of any kind or type whatsoever, whether known or unknown, and whether for compensatory or exemplary damages. Claimant and her guardians, heirs, executors, administrators or assigns further agree to reimburse, indemnify and hold harmless the United States of America, its agents, servants, and employees from and against any and all such causes of action, claims, liens, rights, or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of claims by claimants or their guardians, heirs, executors, administrators or assigns against any third party or against the United States, including claims for wrongful death.

4. This stipulation for compromise settlement is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the claimants or plaintiffs. This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

5. It is also agreed, by and among the parties, that the respective parties will each bear their own costs, fees, and expenses and that any attorney's fees owed by the claimants will be paid out of the settlement amount and not in addition thereto.

6. It is also understood by and among the parties that pursuant to Title 28, United States Code, Section 2678, attorney's fees for services rendered in connection with this action shall not exceed 25 per cent of the amount of the compromise settlement.

7. The persons signing this Settlement Agreement warrant and represent that they possess full authority to bind themselves to the terms of the settlement.

8. Payment of the settlement amount will be made by check from the government to Melanie Williams and Al Arendt, her attorney, jointly, at 201 N. Euclid, Suite 1, Pierre, SD 57501-2571.

9. Claimant's attorney agrees to distribute the settlement proceeds to the claimant, and to obtain a dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses. Claimant's attorney is solely responsible for insuring that the settlement money is properly distributed. No further claims against the United States will be brought by claimant, her guardians, heirs, executors, administrators, or assigns as the result of improper distribution of the settlement proceeds.

Dated this 17 day of December, 1999.

Melanie Williams-Antonio

Melanie Williams
Claimant

Al Arendt
Attorney for Claimant

Cheryl Schrempp DuPris
Assistant U.S. Attorney
Attorneys for Defendant
United States of America

# RYAN DECLARATION
# EXHIBIT 4

FILED
AUG 04 1992
[signature]

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

Civ. No. 92-5100

RODGER RED ELK, Guardian Ad Litem On Behalf Of His Minor Daughter, MELINDA RED ELK, And His Minor Grandchild, TAYLOR RED ELK, And MELINDA RED ELK, On Behalf Of Herself And As Guardian Ad Litem For Her Son, TAYLOR RED ELK,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

COMPLAINT

1. This action arises and this Court has jurisdiction under the Federal Tort Claims Act of 1948, 62 Stat. 982, 28 U.S.C. 1346 (b), 2671 et seq., and Pub. L. 101-512 (1990).

2. Plaintiffs Rodger Red Elk, Melinda Red Elk, and Taylor Red Elk reside at Wanblee, South Dakota, within the jurisdiction of this Court.

3. At all relevant times herein mentioned, defendant, by and through its Department of Interior, Bureau of Indian Affairs, contracted with the Oglala Sioux Tribe and its Public Safety Commission pursuant to 25 U.S.C. 450, et seq., Indian Self Determination Act, to provide law enforcement services on the Pine Ridge Indian Reservation.

4. At all relevant times, the Oglala Sioux Tribe and its

Public Safety Commission operated a police department on the Pine Ridge Indian Reservation and employed numerous employees. In doing and in omitting to do all things alleged herein, the Oglala Sioux Tribe, its Public Safety Commission, and all of its employees were performing functions under the contract entered into pursuant to 25 U.S.C. 450, et seq.

5. At all relevant times, Charles Claymore and Tim Zimiga were employees of the Oglala Sioux Tribe and its Public Safety Commission as law enforcement or investigative officers.

6. Under the provisions of Pub. L. 101-512, the Oglala Sioux Tribe, its Public Safety Commission, and Public Safety Commission employees are deemed, for the purposes of the Federal Tort Claims Act, to be part of the Bureau of Indian Affairs in the United States Department of Interior while either carrying out any such contract or, in the case of employees, while acting within the scope of their employment.

7. On or about August 8, 1989, and thereafter on more than one occasion, Charles Claymore, a law enforcement officer and employee of the Oglala Sioux Tribe and its Public Safety Commission, while acting in the course and scope of his employment as a law enforcement officer and employee, took Melinda Red Elk, a thirteen (13) year old child at the time, into his presence, possession, and custody near Wanblee, South Dakota, and had acts of sexual intercourse with her. As a consequence, Taylor Red Elk was conceived and born.

8. On or about August 8, 1989, and thereafter on more than

one occasion, Tim Zimiga, a law enforcement officer and employee of the Oglala Sioux Tribe and its Public Safety Commission, while acting in the course and scope of his employment as a law enforcement officer and employee, was in the company of Charles Claymore and had full knowledge and information about the sexual intercourse that had and was occurring between Charles Claymore and Melinda Red Elk.

9. Charles Claymore, while employed by the Oglala Sioux Tribe and its Public Safety Commission on or about August 8, 1989, as previously alleged, was negligent, including but not limited to the following:

a. assaulting Melinda Red Elk;

b. committing a battery upon Melinda Red Elk;

c. falsely imprisoning Melinda Red Elk;

d. abuse of process in his dealings with Melinda Red Elk;

e. maliciously prosecuting Melinda Red Elk;

f. taking Melinda Red Elk into his custody and vehicle without any law enforcement purpose;

g. engaging in acts of sexual intercourse with Melinda Red Elk;

h. violating rules, regulations, and procedures dealing with the arrest, custody, and disposition of juveniles;

i. engaging in intercourse without taking precautions to avoid pregnancy;

j. negligently and intentionally inflicting emotional distress upon Melinda Red Elk and Taylor Red Elk;

k. negligently disregarding the rights of Melinda Red Elk under 25 U.S.C. 1302 and other federal and tribal statutes designed for the protection of her rights.

10. Tim Zimiga, while employed by the Oglala Sioux Tribe

and its Public Safety Commission on or about August 8, 1989, as previously alleged, was negligent and unlawful, including but not limited to the following:

a. assaulting Melinda Red Elk;

b. falsely imprisoning Melinda Red Elk;

c. falsely arresting Melinda Red Elk;

d. abuse of process in his dealings with Melinda Red Elk;

e. maliciously prosecuting Melinda Red Elk;

f. taking Melinda Red Elk into his custody and vehicle without any law enforcement purpose;

g. violating rules, regulations, and procedures dealing with the arrest, custody, and disposition of juveniles;

h. negligently and intentionally inflicting emotional distress upon Melinda Red Elk and Taylor Red Elk;

i. negligently disregarding the rights of Melinda Red Elk under 25 U.S.C. 1302 and other federal statutes designed for the protection of her rights;

j. failing to stop Charles Claymore in his unlawful activities with Melinda Red Elk;

k. failing to advise his superiors or other law enforcement personnel of Charles Claymore's actions toward Melinda Red Elk;

l. failing to advise Charles Claymore of the unlawfulness of his action towards Melinda Red Elk;

m. failing to protect Melinda Red Elk from harm and unlawful activity of Charles Claymore.

11. The Oglala Sioux Tribe and its Public Safety Commission, deemed by law to be part of the Bureau of Indian Affairs, in the United States Department of Interior, acting by and through its servants and employees, all acting within the scope of their agency and employment, were negligent with respect

to the employment of Charles Claymore and Tim Zimiga, including but not limited to the following:

a. failing to monitor, supervise, control, and discipline its officers;

b. failing to undertake prior to employment adequate background investigation of persons selected as police officers;

c. failing to employ qualified officers;

d. failing to properly train its officers;

e. failing to intervene when it becomes apparent its officers might be incapable of carrying out their duties in a safe manner;

f. failing to properly select its officers;

g. hiring persons with dangerous propensities;

h. permitting, encouraging, tolerating, and ratifying unjustified, unreasonable, and illegal treatment of civilians and juveniles by police officers.

12. As a proximate cause and cause in fact of the negligence of the Oglala Sioux Tribe, its Public Safety Commission, and Public Safety Commission employees, including but not limited to Charles Claymore and Tim Zimiga, Melinda Red Elk suffered damages in the amount of $2,000,000 for the following:

a. pain and suffering, both mental and physical, in the past and future;

b. expenses of raising a child to his majority;

c. loss of wages and diminished earning capacity;

d. medical expenses, both past and present;

e. loss of enjoyment of life;

f. diminishment in quality of life;

g. child care expenses;

h. embarrassment and humiliation;

i. out of pocket expenses.

13. As a proximate cause and cause in fact of the negligence of the Oglala Sioux Tribe, its Public Safety Officers, and Public Safety Commission employees, including but not limited to Charles Claymore and Tim Zimiga, Taylor Red Elk suffered damages in the amount of $2,000,000 for the following:

a. embarrassment and humiliation of having been conceived in the manner in which he was;

b. pain and suffering, both mental and physical, in the past and future;

c. diminishment in quality of life and loss of enjoyment of a normal life;

d. loss of reputation, disrepute, and disgrace;

e. expenses of life;

f. child support.

14. If defendant were a private person, it would be liable to each plaintiff in accordance with the law of South Dakota or the Oglala Sioux Tribe.

On or about August 8, 1991, each plaintiff, Melinda Red Elk and Taylor Red Elk, filed a claim for administrative settlement with the Bureau of Indian Affairs as required by 28 U.S.C. 2675 in the amount of Two Million Dollars ($2,000,000). The Bureau of Indian Affairs denied the claims on or about February 9, 1992, and this action is brought within six months of denial as authorized by law.

WHEREFORE, each plaintiff, Melinda Red Elk and Taylor Red Elk, demands judgment against defendant in the amount set forth

in their administrative claim or such other amount as this Honorable Court deems proper under the circumstances, plus their costs and disbursements, including attorney's fees, and for such other or additional relief as the Court may deem just in the premises.

Dated this 4th day of August, 1992.

Terry L. Pechota
VIKEN, VIKEN, PECHOTA, LEACH & DEWELL
Attorneys at Law
1617 Sheridan Lake Road
Rapid City, SD 57702
(605) 341-4400

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

FILED

JUL 18 1994

William F Clayton
CLERK

RODGER RED ELK, Guardian Ad litem on Behalf of His Minor Daughter, MELINDA RED ELK,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CIV. 92-5100

FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DAMAGES

The above-entitled matter is currently ready for this Court's decision as to damages. The liability phase of this bifurcated trial was held on February 22-23, 1994. Based on the evidence adduced at trial and applicable law, this Court held that Melinda Red Elk was entitled to recover damages she suffered because of the wrongful sexual acts perpetrated on her by Charles Claymore, who was then a tribal police officer. Liability for Claymore's misconduct was essentially imputed to the government, as his employer, because such actions were or should have been foreseeable to the police agency, given its relaxed practices about hiring, supervising, and training its officers. The Court's findings and conclusions regarding jurisdiction and liability, filed April 5, 1994, are hereby reiterated and incorporated herein by this reference.

The damage phase of the above-entitled matter was tried to the Court on June 27, 1994. After considering the entire file, this

Court makes the following findings of fact and conclusions of law as to damages suffered by Melinda Red Elk.

FINDINGS OF FACT & CONCLUSIONS OF LAW

1. Melinda Red Elk has suffered the following damages as a result of the improper sexual relationship with Charles Claymore:

a. Her educational/vocational goals have suffered. She quit high school as a result of her pregnancy with Claymore's child; and although she attempted to continue her education at a later time, she was unsuccessful. Although she was carrying another man's child at the time she stopped attending school the second time, it is clear that her education was interrupted -- at least temporarily and perhaps permanently -- because of Claymore's misconduct.

b. During the time Melinda was pregnant with the child that Claymore had fathered, she suffered substantial physical discomfort and illness, including diabetes and morning sickness.

c. During her pregnancy and since Taylor's birth, Melinda has suffered mental anguish because of alienation and taunts from her peers about both herself, Taylor, and his mixed-breed heritage. Prior to the relationship with Claymore, Melinda was experiencing a normal childhood. This was curtailed by the relationship -- or, more specifically, by the pregnancy and child which arose out of the relationship.

d. During the relationship with Claymore, Melinda suffered both physical and emotional pain because the sexual activities were forced upon her by Claymore against her will.

e. Ever since the pregnancy which resulted from the improper relationship with Claymore, Melinda's social activities -- both those engaged through school and routine friendships -- have been more limited.

2. A reasonable award for all the damages suffered by Melinda is $100,000.

Dated this 18th day of July, 1994.

BY THE COURT:

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE

ATTEST:

WILLIAM F. CLAYTON, CLERK

By: ____________
Deputy Clerk

(SEAL)

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

FILED
JUL 18 1994
William F. Clayton
CLERK

RODGER RED ELK, Guardian Ad litem on Behalf of His Minor Daughter, MELINDA RED ELK,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

CIV. 92-5100

JUDGMENT

In accordance with the Findings of Fact and Conclusions of Law filed herein on July 18, 1994, it is hereby

ORDERED that Rodger Red Elk, Guardian Ad Litem on behalf of his minor daughter, Melinda Red Elk, shall have judgment in the amount of $100,000 plus costs in the amount of $2358.33 to be hereinafter taxed and inserted by the Clerk.

Dated this 18th day of July, 1994.

BY THE COURT:

Andrew W. Bogue
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE

ATTEST:

WILLIAM F. CLAYTON, CLERK

By: Alice R. Keasley
Deputy Clerk

(SEAL)

# RYAN DECLARATION
# EXHIBIT 5

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

FILED
DEC 9 1997
CLERK

* * * * * * * * * * * * * * * * * * * *

DEBRA ST. JOHN,

Plaintiff,

vs.

COMPLAINT

CIV97-3051

UNITED STATES OF AMERICA, acting through the BUREAU OF INDIAN AFFAIRS,

Defendant.

* * * * * * * * * * *

COMES NOW the Plaintiff and for her cause of action, states and alleges as follows:

1. This action arises pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671-2680. This Court is vested with jurisdiction pursuant to 28 U.S.C. §1346.

2. Plaintiff Debra St. John currently resides in Eagle Butte, South Dakota which is within the District of South Dakota, Central Division.

3. Defendant, United States of America, operates a police force on the Crow Creek Sioux Indian Reservation within the District of South Dakota.

4. On or about November 25, 1995 Richard Coleman was employed by the United States of America as a Bureau of Indian Affairs police officer.

5. Prior to November 25, 1995 Richard Coleman, while in the service of the United States of America and acting within the scope

1

of his office and employment, engaged in a pattern of harassment of Plaintiff.

6. Prior to November 25, 1995 Richard Coleman had a history and criminal record involving extreme violence.

7. On or about November 25, 1995 Richard Coleman while in the service of the United States of America and acting within the scope of his office and employment arrested and jailed Debra St. John without cause on the Crow Creek Sioux Indian Reservation.

8. On or about November 25, 1995 Defendant Coleman then, while in the service of the United States of America removed Plaintiff Debra St. John from the jail, transported her to the country near North Bend, South Dakota and forcibly raped her.

9. The Bureau of Indian Affairs was negligent in hiring, training and supervising Richard Coleman. Individuals as the jail and in the employ of the United States, were negligent in allowing Richard Coleman to remove Plaintiff from the jail unsupervised.

10. Since November 25, 1995 and since June 19, 1997 when the claim was presented to the appropriate agency, Richard Coleman has continued to harass and threaten Debra St. John while in the service of the United States of America and acting within the scope of his office and appointment and Plaintiff has suffered further injury requiring medical treatment.

11. As a result of the Defendant's and its employee's negligence, Debra St. John has suffered mental anguish, emotional trauma, depression, pain and suffering and medical and hospital expenses and will continue to suffer mental anguish, emotional trauma, depression, pain and suffering and medical and hospital

expenses in the future.

12. On June 19, 1997 Plaintiff submitted a claim, based upon the allegations herein, in the amount of $500,000.00 to the Bureau of Indian Affairs, United States of America.

13. On August 6, 1997, the claim was rejected by the Department of the Interior, the Office of the Solicitor, by and through Marcia Kimball.

WHEREFORE, Plaintiff requests judgment against the Defendant as follows:

1. The sum of $500,000.00;

2. The Plaintiff's costs and expenses in this action;

3. Such other and further relief as the Court may deem just and proper under the circumstances.

Dated this 5th day of December, 1997.

Lee C. "Kit" McCahren
Olinger, Lovald, Robbennolt
& McCahren, P.C.
Post Office Box 66
Pierre, South Dakota 57501
(605) 224-8851

Attorney for Plaintiff

FILED
OCT 6 1999
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

JUDGE - Charles B. Kornmann
CASE NO. - CIV97-3051

REPORTER - Dick Christoffer
Date - October 5, 1999
PAGE NO. - 1

| CASE | COUNSEL |
|---|---|
| DEBRA ST. JOHN<br>Plaintiff, | Wade Allen Reimers |
| vs. | |
| UNITED STATES OF AMERICA<br>Defendant. | Cheryl Schrempp DuPris |

---

TIME HEARING SCHEDULED TO BEGIN: 10:30 AM

TIME:

10:40 AM Enter Court Trial before the Honorable Charles B. Kornmann, Judge, presiding.

Debra Jo St. John sworn in as witness on behalf of herself, the Plaintiff.

Cross-examination.

Re-direct.

Questions of the witness by the Court.

12:15 PM Court in recess.

1:20 PM Court resumes.

Gerilyn Livermont sworn in as witness on behalf of the Plaintiff.

Courtroom Deputy

Cross examination.

Questions of the witness by the Court.

Richard Alan Coleman sworn in as witness on behalf of the Plaintiff.

Cross-examination.

3:25 PM Court in recess.

3:50 PM Court resumes.

Re-direct.

Questions of the witness by the Court.

William J. Gravatt sworn in as witness on behalf of the Plaintiff.

Cross-examination.

Re-direct.

Questions of the witness by the Court.

Further Re-direct.

Additional questions of the witness by the Court.

Further Re-direct.

Plaintiff rests.

Rio Owen sworn in as witness on behalf of the Defense.

Questions of the witness by the Court.

Further direct.

Courtroom Deputy

Cross-examination.

Re-direct.

Questions of the witness by the Court.

Further re-direct.

Re-cross.

Further questions of the witness by the Court.

Court will be in recess until 9:00 am on Wednesday, October 6, 1999.

5:20 PM Court in recess.

Courtroom Deputy

CASE NO. - CIV97-3051
Case Name - Debra St. John v. USA
PAGE NO. - 4

Date - October 6, 1999

9:15 AM Enter continuation of Court Trial proceedings before the Honorable Charles B. Kornmann, Judge, presiding.

Patricia Sterling sworn in as witness on behalf of the Defense.

Cross-examination.

Re-direct.

Re-cross.

Lisa Ann Crow sworn in as witness on behalf of the Defense.

Cross-examination.

Questions of the witness by the Court.

Victor Roy Ziegler, Sr. sworn in as witness on behalf of the Defense.

Cross-examination.

Re-direct.

Re-cross.

Questions of the witness by the Court.

Steven A. McLaughlin, Sr. sworn in as witness on behalf of the Defense.

Cross-examination.

Defense rests.

Wade Allen Reimers makes closing argument to the Court on behalf of the Plaintiff.

Cheryl Schrempp DuPris makes closing argument to the Court on behalf of the Defense.

[signature]
Courtroom Deputy

CASE NO. - CIV97-3051
Case Name - Debra St. John v. USA
PAGE NO. - 5

Date - October 6, 1999

---

11:05 AM Court in recess.

11:30 AM Court resumes.

The Court finds for the Defendant as to the alleged sexual assault.

The Court finds for the Plaintiff as to the unlawful arrest and awards damages to the Plaintiff in the amount of $3,000.00. Costs will be taxed in favor of the Plaintiff.

12:20 PM Court adjourned.

Courtroom Deputy

FILED
OCT 7 1999
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| DEBRA ST. JOHN, Plaintiff, -vs- UNITED STATES OF AMERICA, Defendant. | CIV 97-3051 JUDGMENT |

This matter came on for court trial on October 5 and 6, 1999. The Court issued its findings of facts and conclusions of law pursuant to Fed. R. Civ. P. 52(a) orally. Based upon those findings of facts and conclusions of law, it is hereby

ORDERED that judgment is entered for plaintiff and against defendant in the amount of $3,000.00. Plaintiff is not entitled to prejudgment interest.

IT IS FURTHER ORDERED that costs shall be assessed against defendant and in favor of plaintiff and hereafter inserted by the Clerk in the amount of $ 1167.34.

Dated this 6th day of October, 1999.

BY THE COURT:

Charles B. Kornmann
CHARLES B. KORNMANN
U.S. District Judge

ATTEST:

JOSEPH HAAS, CLERK
BY: [signature] DEPUTY
(SEAL)

FILED
MAY 12 2003
CLERK

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 02-2738

---

| | | |
|---|---|---|
| Debra St. John, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of South Dakota. |
| | * | |
| United States of America, | * | [UNPUBLISHED] |
| | * | |
| Appellee. | * | |

---

Submitted: March 11, 2003

Filed: March 17, 2003

---

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.

---

PER CURIAM.

Debra St. John brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (2000), alleging Richard Coleman, her ex-husband, falsely arrested and imprisoned her and sexually assaulted her in the scope of his employment as a Bureau of Indian Affairs (BIA) police officer. The district court* found for St. John on the false arrest and imprisonment claims and awarded her $3000.00 in damages. On appeal we affirmed in part, upholding the judgment and award based on St. John's

---

*The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

6

false arrest and imprisonment claims, and reversed in part, remanding for factual findings about whether the alleged sexual assault occurred in the scope of Coleman's employment. St. John v. United States, 240 F.3d 671, 678-79 (8th Cir. 2001). Specifically, we informed the district court that it was impossible for this court to decide whether Coleman, who earlier arrested and jailed St. John, was acting within the scope of his employment without knowing whether he threatened her with rearrest to compel her to enter his truck after he released her from jail, thus coercing her to accompany him to an out-of-the-way place where the sexual incident occurred. Id. at 677.

On remand, the district court was faced with diametrically opposed accounts: St. John claimed Coleman threatened to put her back in jail if she did not get into his truck, and Coleman claimed he made no such threat and St. John willingly entered and rode away in his truck. Recognizing it was faced with a critical credibility determination, the district court carefully explained why it resolved the testimonial conflict in Coleman's favor, and thus dismissed the sexual assault charge because Coleman was not acting in the scope of his employment during the sexual incident.

On appeal, St. John claims the district court's finding was clearly erroneous. We disagree. Because St. John essentially seeks our "reevaluation of the evidence and rejection of the district court's factual finding[]," an extended discussion of the issue presented by this appeal would serve no useful purpose. Craft v. Metromedia, Inc., 766 F.2d 1205, 1211 (8th Cir. 1985). In this circuit, it is well established that a finding based on the district court's credibility determination to believe the live testimony of one of two contradictory witnesses "can virtually never be clear error." Bush v. Marshalltown Med. & Surgical Ctr., 123 F.3d 1130, 1134 (8th Cir. 1997); see Craft, 766 F.2d at 1212. Thus, having concluded the district court's finding is not clearly erroneous and the sexual incident occurred outside the scope of Coleman's employment, we do not reach the issue of whether the sexual incident was consensual or not.



6

Having carefully considered St. John's contention and finding it to be without merit, we affirm the district court's dismissal of St. John's sexual assault claim.

A true copy.

Attest: Michael E. Gans

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.