# COPY OF TRANSCRIPT

IN THE COURT OF FEDERAL CLAIMS

LAVETTA ELK,

Plaintiff,

vs. Case No. 05-186L

THE UNITED STATES,

Defendant.

DEPOSITION OF

JOSEPH R. KOPF,

taken on behalf of the Plaintiff, pursuant to Agreement of the Parties, beginning at 9:05 a.m. on the 19th day of March, 2007, at the law offices of Myers, Pottroff & Ball, 320 Sunset Avenue, in the City of Manhattan, County of Riley, and State of Kansas, before Barbara J. Hoskinson, Certified Shorthand Reporter.

DEFENDANT'S EXHIBIT 9E

PENGAD-Bayonne, N. J.

Appino & Biggs Reporting Service, Inc.
Technology Specialists in Complex Litigation
(Main Office) 5111 SW 21st Street Topeka, KS 66604 785.273.3063
Toll Free 888.273.3063 Fax 785.273.0762
6420 W. 95th Street, Suite 200 Overland Park, KS 66212 913.383.1131
www.AppinoBiggs.com

Q. Is it a very rural road away from the housing?
A. I think so, yeah.
Q. Were you parked behind a hill?
A. I don't remember. I think so, maybe. I don't know. Try to forget about it.
Q. Were you far away where -- from where people could hear you?
A. I guess. I don't know.
Q. You said that she -- Lavetta initiated the sexual contact?
A. Yeah.
Q. 'Cause she started by kissing you?
A. Started kissing me and --
Q. Where was she kissing you?
A. Neck, lips. Kissed her back, I guess, 'cause fear of, oh, heck, got no other option, but once she lift the shirt, put my hands, that was it, no.
Q. Did you allow her to kiss you on the neck?
A. I was in shock. I mean, you ever been put in that position?

Q. Did you allow her to kiss you on the lips?
A. Yeah.
Q. Did you kiss her back on the lips?
A. I don't remember if I did or not.
Q. How long were the two of you kissing for?
A. I don't know. Few seconds.
Q. Okay. You had your arm on her -- or your hand on her breast?
A. She put my hand on her breast and lifted her shirt, put my hands on her breasts and then that was when it stopped, like, you know, hell no, we'll do whatever we need to do.
Q. Did you -- did you move your hand around her breast and then caress it?
A. I don't remember if I did or not.
Q. How long did you have your hand on her breast?
A. Must have been a few seconds. I don't know.
Q. Was there a period of time when you're having this sexual contact with

her where you're reciprocating?

A. Reciprocating?

Q. Also, you know, making advances toward her.

A. I don't believe I did. I was so in shock what she was pulling. No, I don't think so. No. I was just trying to figure out how the hell to get myself out of here.

Q. Did you immediately remove your hand from her breast or did you keep your hand on the breast for a while?

A. I moved my hand back from her breast.

Q. Right away?

A. When that little man started kicking in, it was like, we'll deal with this, get -- we need to get out of here.

Q. How long were the two of you kissing?

A. I said a few seconds. I don't know.

Q. Was there a period of time where you were positioned on top of her?

A. She tried to pull me, but I guess

Q. All right. Did you say you wanted to correct certain things from your prior statements?

A. I believe I did. I don't know exactly on the first one, but this one is -- (incompleted).

Q. After your statement you were also asked some questions under oath by the agent, is that right?

A. Yes.

Q. All right, in this statement you told the agent that you tried to kiss -- tried to kiss and touch Lavetta's breasts. Is that a true statement or is that a lie that you told?

A. Sir, that's what they wrote.

Q. They wrote this statement and you signed it?

A. Yeah.

Q. Yes?

A. Yeah. They said they wasn't going to take nobody to jail, shut up and sign it.

Q. You knew it was a sworn statement that you were signing?

A. Yeah. They didn't let me leave until I signed it.
Q. All right. Did you tell them that you tried to kiss and touch Lavetta's breasts -- I'm sorry, strike that. Did you tell the agent that you tried to kiss Lavetta?
A. I tried to kiss her?
Q. Yes.
A. Said she tried to kiss me, but they didn't want to hear that.
Q. Did you tell the agent that you tried to touch her breasts?
A. Say again, sir.
Q. Did you -- did you tell the agent that you tried to touch Lavetta's breasts?
A. Tried to touch Lavetta Elk's breasts?
Q. Yeah, did you tell the agent that?
A. No.
Q. Okay. On the statement that you signed on June 5th at 1945 it says that Lavetta told you no at least once and

pushed you away at least once.

A. That's not a true statement.

Q. You lied in this statement under oath?

**MR. WEBB:** Objection.

**BY MR. HOROWITZ:**

Q. You made a false statement?

**MR. WEBB:** Objection.

A. Sir, CID wrote this and told me to sign it and I took my Article 15.

**BY MR. HOROWITZ:**

Q. When you signed this statement did you know it was a false statement?

A. They said sign it or you're going to jail, we're not letting you leave, and I previously said I didn't do this. They wouldn't let me leave until I signed it.

Q. Who told you that you had to sign this?

A. They did.

Q. Who is they?

A. Whoever wrote or signed it, they said they weren't going to put nobody in jail tonight and I needed to sign it and

just go.

Q. This was Agent Anthony Tiroch?

A. Yes.

Q. Okay. Who else was with him?

A. I don't remember.

Q. All right. How many people were with you?

A. Just me and him in there.

Q. Pardon me?

A. All I can remember was just me and him in there.

Q. On page 2 just above your signature there's a statement that says, I have made this statement freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence or unlawful inducements. Do you see that?

A. Yes, sir, I see that.

Q. And you signed right below that?

A. Yes, sir, I did.

Q. It also says in the statement that you knew she did not want to mess around and after she said no you stopped and realized what you were doing, so you

drove to her friend's house. Is that a true statement?

A. No. I'm the one who dropped her off, told her that's it, I'm dropping her off. CID did not want to hear that. I was not -- didn't have opportunity of counsel as I should have.

Q. It says that -- it also says in the statement that she said no when you started kissing.

A. She didn't. She's the one initiated it.

Q. Okay. So that was a -- that's a false statement in here?

A. Yes, sir.

Q. All right.

A. Took my Article 15, what else?

Q. It also says that you slipped your hand under her shirt and bra.

A. Sir, she lifted her shirt.

Q. So this is a false statement?

A. Sir, CID told me to sign this. They wrote it, I signed it. They weren't going to put anybody in jail. After previously saying I didn't do

this, she initiated it, they did not want to hear this.

Q. Did you feel that you were -- that there was a possibility you were going to be prosecuted after -- when you signed the statement?

A. I already knew it was.

Q. Pardon me?

A. Yes.

Q. Hadn't you -- hadn't the U.S. attorney's office already declined to prosecute at this point?

A. This is military.

Q. Okay. So you thought you would be prosecuted by whom?

A. Military.

Q. All right. What did you think would happen to you?

A. I didn't know. They said either sign it or we're taking you to jail.

Q. All right. You go on to say in this statement that you asked her if she had a place to stay in Kyle, South Dakota, is that true?

A. It's kind of true. I asked her